## THE MOHAWK BANK *vs.* BRODERICK & POWELL.

A *check* on a bank for the payment of money, to charge an *endorser*, must be
presented with all despatch and diligence consistent with the transaction of
other commercial concerns ; and it was accordingly *held*, where a check
was received in *Schenectady* on the 14*th January*, drawn on a bank in *Al-
bany*, a distance of 16 miles from the former place, and between which pla-
ces there is a daily mail, and not presented until the 6*th February*, that
*laches* was imputable to the holder, and that the *endorser* was discharged.
*It seems*, had the check in this case been sent to Albany on the *fifteenth* day
of January, and presented on the next day and notice given, the *endorser*
would have been held liable.
Although it is said that *checks* are like *inland bills of exchange*, and are to be
governed by the same principles, *greater diligence* is required in present-
ing them than in presenting bills of exchange.
A demand of payment of a check from the *drawee*, must be shewn in an ac-
tion by the holder *against an endorser*, although the drawer had no funds in
the hands of the drawee, nor any reasonable expectation that his draft
would be paid ; under such circumstances, in an action *against the drawer*,
a demand would not be necessary.
A check *post dated* is not like a bill of exchange, payable on a particular day ;
the only effect of its being post dated is, that it is payable on demand, *on*
or *after* the day on which it purports to bear date.
Inland bills of exchange and promissory notes *payable on demand*, must be de-
manded within a *reasonable time;* what shall be deemed reasonable time,
depends on the circumstances of each particular case.
Whether a presentment is made within a reasonable time, is a *question of law*,
where there is no dispute about the facts.

THIS was an action of assumpsit, tried at the Albany circuit in March, 1831, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The plaintiffs declared as the *endorsees* of a *check* drawn by John Le Breton, on the Mechanics and Farmers Bank in *Albany*, for $86,18, bearing date the 14th January, 1830, payable to the order of the defendants, and by them endorsed to the plaintiffs. A special verdict was found, from which the following facts appeared : The check was drawn previous to the 14th January, post dated, and delivered to the defendants, who transferred it, also before the 14th January, to one Myers, and endorsed their names upon it in blank ; on the 14th January Myers deposited it in the Mohawk Bank at *Schenectady*, where it was received and entered to his credit as cash. On the 3d February, the Mohawk Bank sent the check to the Commercial Bank in Albany in exchange as cash, which bank caused the check to be presented for payment to the Mechanics and Farmers Bank on the 6th February, when payment was refused, the check protested, and notice sent to the defendants. Neither on the 14th January, 1830, nor at any time afterwards, had Le Breton, the drawer of the check, any funds in the Mechanics and Farmers Bank ; previous to that day he had overdrawn his account $90, which was made good on the 4th February. At the date of the check, Le Breton was a merchant in Albany, doing business, and continuing in business until the 1st of February, when he stopped payment ; during all the month of January he was insolvent, and continued so until his death ; none of his debts except the check in question were due until he stopped payment. The average time in which the Mohawk Bank makes its exchanges with the Albany banks is once in three weeks ; from the 14th January until the 3d February no packages were sent by the Mohawk Bank to the Albany banks, nor were any exchanges made between those dates by the Mohawk Bank with the Albany banks. When the Mohawk Bank holds notes payable at Albany, they are sent when about to fall due to the Albany banks for collection, although the usual time for making exchanges has not arrived ; but between the above dates no notes were sent to Albany by the Mohawk Bank. A

NEW-YORK, May, 1833.

Mohawk Bank
v.
Broderick.

*daily mail* passes between Schenectady and Albany, (and it might have been added that the distance between the two places is about 16 miles.)

The special verdict was argued by

*A. C. Paige*, for the plaintiffs.

*M. T. Reynolds*, for the defendants.

*By the Court*, SAVAGE, Ch. J. Upon the facts presented by the special verdict, the plaintiffs contend that no demand was necessary, as the drawer had no funds in the hands of the drawees, and was insolvent; and if a demand was necessary, it was made in a reasonable time. The defendants insist that the check having been drawn and negotiated before its date, it was payable on the day of its date, to wit, the 14th January, and should have been presented when payable; and at all events, that it was not presented in a reasonable time.

I cannot assent to the proposition of the plaintiffs, that no demand was necessary in this case. When the action is *against the drawer*, who has drawn where he had no funds, nor any reasonable expectation that his draft would be paid by the drawee, he cannot object the want of seasonable demand and notice, because in such case he cannot possibly sustain damage from the want of presentment of the bill; such, however, is not this case. This suit is brought not against the drawer, but endorsers. The rule on this subject is well laid down by Mr. Justice Sutherland in *Murray* v. *Judah*, 6 *Cowen*, 490: "As a general rule, therefore, a check is not due from the drawer until payment has been demanded from the drawee, and refused by him. As between the holder of a check and an endorser or third person, payment must be demanded within a reasonable time. But as between the holder and maker or drawer, a demand at any time before suit brought is sufficient, unless it appear that the drawee has failed, or the drawer has in some other manner sustained injury by the delay." Between these parties a demand of payment from the drawees was clearly necessary. Nor can I assent to the proposition of the defendant, that the check in question is a bill payable on the 14th January; and that therefore it is to be gov-

erned by the same rules as bills payable on a particular day. The check was both drawn and negotiated before its date; the effect of which is, that it is payable on demand, on or after the day on which it purports to bear date, and nothing more.

The only serious question is whether the check was presented in reasonable time. In *The Merchants' Bank* v. *Spicer*, 6 *Wendell*, 445, Mr. Justice Marcy says : " Checks are considered as having the character of inland bills of exchange, and the holder thereof, if he would preserve his right to resort to the drawers and endorsers, must use the same diligence in presenting them for payment, and in giving notice of default of the drawer that would be required of him as the holder of an inland bill." With regard to inland bills of exchange and promissory notes, *payable on demand,* the only rule as to when payment must be demanded is, that it must be done within a reasonable time. What shall be deemed a reasonable time must in some measure depend on the circumstances of each particular case. In this court, whether the presentment is made within a reasonable time, is held to be a question of law, where there is no dispute about facts ; in some other courts it is held to be a question for the jury. It is singular that so little is to be found in the books upon the question what time is reasonable ? As to bills and promissory notes, we have in our own court some cases. In *Aymar* v. *Beers,* 7 *Cowen,* 711, Mr. Justice Woodworth has reviewed the cases, from which it appears that no precise time has been determined upon as a reasonable time. In that case the bill was drawn in New-York upon a house in Richmond, Virginia, at three days sight ; it was presented in *twenty-nine* days, and held to be in time, in consequence of peculiar circumstances. In *Robinson* v. *Ames,* 20 *Johns. R.* 146, *seventy-five* days had elapsed, and it was held that there was no laches ; in that case the bill had been negotiated. In both these cases the action was against the drawer.

Although it has been often said that *checks* are like *inland bills of exchange,* and are to be governed by the same principles, yet I apprehend greater diligence has been required in presenting checks than ever has been required in presenting bills of exchange. In *Mechanics' Bank* v. *Spicer,* before cited, it was held that it was not indispensable that a check should

NEW-YORK,
May, 1833.

Mohawk Bank
v.
Broderick.

be presented on the same day it was drawn, where the parties all resided in the same city. Mr. Chitty, in his treatise on bills, has collected many of the cases on this point, *p. 345 to 353, Phil. ed. of* 1821. When this question has been decided by juries, no uniform rule could prevail; in some, three or four or five days were deemed not too long, and in others it was held that the demand should be on the same day. But the more recent rule seems to be that a check *given* and *payable* in *London* in the morning must be presented the next morning, or at farthest, during the banking hours of the next day; if it be payable at a place different from where it was drawn, it should be sent by the mail of the next day. In the case of *Beeching* v. *Gower*, 1 *Holt*, 313, the plaintiffs were bankers at Tunbridge. On the 5th March, 1816, they received from the defendant a note of the Kentish bank, payable at Maidstone and at London. They sent it to London on the evening of the 5th; on the 6th it was presented, but the house had failed; it was returned to the plaintiffs on the 7th, and notice given to the defendant. The Maidstone bank paid on the 6th, but stopped payment on the 7th. Maidstone is 14 miles from Tunbridge; London is more than twice the distance. In this action the plaintiffs recovered. In another case between the same parties, the defendants paid the plaintiffs a check on the Maidstone bank on the 5th April. The plaintiffs kept it the 5th and 6th, and sent it to Maidstone on the 7th, but the bank did not open that morning. Had it been sent on the 5th or 6th, it seems it would have been paid. Gibbs, Ch. J. nonsuited the plaintiffs, saying, " The plaintiffs cannot recover; they have been guilty of laches. I will not say that it was their duty to have sent the check off by the post of the 5th; but the extreme time up to which they were justified in keeping it, was till the post of the 6th. They do not send it till the 7th. It does not matter when the carrier arrived; they must suffer for their negligence." In *Richford* v. *Ridge*, 2 *Campb.* 537, Lord Ellenborough says: " It seems convenient that a check received in the course of one day should be presented the next, and that the holder must present it with due diligence to the bankers on whom it is drawn, and give notice of its dishonor to those against whom he seeks a remedy. In

that case it appeared that the plaintiffs were bankers at Ayles-bury. On the 13th June they cashed for the defendant a check drawn by a house in Smithfield upon a house in the city of London. The plaintiffs might have sent the check on the same day, but they did not till the next, the 14th; their agents presented it on the 15th, when it was dishonored, and notice was given on the 16th. The plaintiffs had a verdict. These were nisi prius cases, but the case of *Robson* v. *Bennet,* 2 *Taunt.* 389, was argued and considered by the court. Mansfield, Ch. J. cites the case of *Appleton* v. *Sweetapple,* as deciding that a check need not be presented on the day on which it is drawn. In *Cornell* v. *Lovett,* 1 *Hall,* 68, Mr. Justice Oakley says, the rule appears to be settled that no laches can be imputed to the holder, if the check is presented at any time during the day after that on which it was given. The true rule undoubtedly is, that a check, to charge an endorser, must be presented with all the dispatch and diligence which is consistent with the transaction of other commercial concerns.

The plaintiffs received this check on the 14th January. They were in the habit of sending notes at other times than their regular periods of exchanging, according to the time of their falling due; there was nothing in the nature of their business, therefore, which presented an earlier presentment of the check in question. According to the cases above referred to, the check should have been sent on the 15th; it would then have been presented on the 16th. Had notice of its dishonor been then given, the court cannot say that the defendants might not have secured themselves, as the drawer was doing business for two weeks after that time before he stopped payment. I am of opinion the defendants are entitled to judgment.