Mr. Chief Justice Sharkey
delivered the opinion of the court.
This action was brought on a check for f1335, drawn on the branch of the Commercial Bank, of Natchez, at Canton, by Thomas in favor of Pack. There was a verdict for the defendant, and it is now insisted, that the court erred in admitting testimony, and also in its charges to the jury.
The first point raised relates to the admissibility of Stephens’s téstimony, which was to this effect: in conversation, Pack stated to the witness, that he (Pack) had met defendant, Thomas, in. Canton, who informed him, that he had collected a debt for him as attorney in notes of the Brandon Bank, and asked Pack if he would receive them in payment; Pack replied that he would not, and they separated. They met again, when Thomas asked Pack what he ought to do with the Brandon notes; the *17 latter replied that his advice would be to deposit them in the Commercial Bank. They met a third time, when Thomas informed Pack that he had deposited the notes as advised, and offered Pack the check in question, which he received, without saying whether he would or would not receive the Brandon notes. His reason for doing so was, that he thought the bank might use the notes and pay him in money.
The cashier of the bank was examined, who stated that Thomas had no money in the bank at the time the check was drawn, or afterwards, except in Brandon notes, which had been received as a kind of special deposit, and that Thomas was informed when he made the deposit, that money would not be paid on it. Payment of the check was demanded and refused, though the cashier states that he would have paid it in Brandon notes.
Under these circumstances, it must be very clear that Stephens’s testimony was improperly admitted. It was an effort to prove, from circumstances, an agreement to receive the Brandon notes in payment of the check. This was the effect of the testimony, and,,beyond all doubt, the object of its introduction. Then the question is plainly this : if one give a check for so much money, is it competent for him to prove by oral testimony, that it was agreed, either expressly or impliedly, at the time the check was given, that it should be payable, not in money, but in something else? Is it competent to show that it was not intended as a check for money, although it calls for money on its face 1 This is too clearly varying the legal effect of the instrument; it is changing the contract. And the objection is not obviated by the circuitous method of arriving at the fact. The competency of evidence is to be determined by its legal effect. It is immaterial how long or circuitous the chain may be by which the end is reached. It would have been just as free from objection, if the witness had said in so many words, Mr. Pack agreed to receive Brandon notes for the check. By the face of the instrument it is one thing, a check payable in money; by the proof offered it is a different thing, it is a check payable in depreciated bank notes, which are not money. It might as well have been con *18 verted into a check for any other commodity. And the object was not to defeat the instrument Iqr matter subsequent, which operated as a discharge or a new contract; but to vary its effect by showing facts which transpired before and at the time it was delivered.
The rule is very distinctly laid down, that where the law requires a written instrument, or where parties adopt that mode of contracting, it is a matter of principle and policy to exclude inferior evidence from being used, either as a substitute for, or as an alteration of, the written contract. The operation of an instrument cannot be varied by showing, that a different intention existed at the time it was made. Its legal effect must be preserved, and all contemporaneous expressions or circumstances which tend to vary it, must be excluded, unless established by proof of the same character. 3 Starkie on Evid. 994-1008. Oral evidence is inadmissible to prove that a general acceptance of a bill of exchange was intended to be conditional only. Heaverin v. Donnell, 7 S. & M. 244. It is inadmissible to prove that a promissory note was intended to be payable at a particular time, when no time of payment was expressed, as that would alter its legal effect; Thompson v. Ketchum, 8 Johns. 189; or to prove that one who had engaged in writing to become surety on a promissory note, was only to be held liable in case of the insolvency of the principal; Hunt v. Adams, 7 Mass. R. 519; or to show that a note payable at a day certain, was to be payable on a contingency only. 3 Starkie’s Evid. 1008. The law presumes, that parties mean exactly what they have said in writing, and that they have said all that was intended, and it is dangerous to relax the rule which holds them to their written contracts.
It is also insisted, that the court erred in refusing to instruct the jury, that if they believed from the evidence, that when Thomas drew the check he had not funds in bank for its payment in cash, or any part of it, but only Brandon notes placed there as a special deposit, to be paid out in the same notes, and that he knew cash would not be paid by the bank on account of such deposit, they ought to find for the plaintiff. This charge *19 should have been given. A check for cash is not payable in depreciated bank notes, or other specific thing. If it was the agreement of the parties, that Brandon Bank notes should be received in payment, the check should have been so drawn. Such an agreement Avould have justified the refusal of the charge, and the court Avas influenced, no doubt, by the consideration, that Stephens’s testimony might establish such an agreement, but Ave have shorvn that it was incompetent for. that purpose. The propriety of the charge is made manifest by the testimony of the cashier.
At the request of the defendant, the court gave three charges, which Avere also made the ground of objections. The first was, that if the defendant, when he drew the check, had any reasonable ground to believe it would be paid, he was entitled to due notice of dishonor, and the law was for the defendant.
Some of the decided cases have held this doctrine applicable to checks, on the ground of their resemblance to inland bills of exchange. Whilst there is a resemblance in form, they are still very different things; they differ in their origin and object, and it may be very questionable, Avhether notice of dishonor is necessary in any case, except as rebutting evidence. If the defendant should show, that the bank in which the deposit was made had failed, then a presumption Avould arise, that he had sustained an injury, Avhich would be rebutted by proof of notice. But if the bank continues solvent, no injury can result for want of notice. A check is supposed to be drawn on an actual deposit of money, which has been made for the convenience and safety of the depositor, in a bank of his own selection, which acts as his agent in making payments. It is not drawn on a commercial transaction, past or future, but it is a means of making a cash payment. The debtor answers the call of his creditor by saying, “I have deposited the money Avith my banker for you; call and get it on this voucher, which transfers the amount to your use.” If the check be receiAred by the creditor, he thereby impliedly agrees to make demand ; but as a notice is required on commercial paper to protect the drawer, its object must be the same as regards checks. If, therefore, no *20 injury can result from want of notice of the non-payment of a check, then of course notice may be dispensed with. If a check be drawn without funds to meet it, the drawer cannot be injured by a failure to give notice; he has nothing at stake to lose, and to draw a check under such circumstances is a fraud. Both demand and notice may be dispensed with, where the drawer has no funds in bank. True v. Thomas, 16 Maine R. 36; Mohawk Bank v. Broderick and Powell, 10 Wend. 304. If, on the other hand, there are funds in bank, and payment be refused, they, of course, remain there still as the funds of the depositor. They are just where he placed them, and he loses nothing. If he gets clear of the check for want of notice, he is evidently a gainer that much, as he still has the money on deposit. The law there would not presume an injury until it be shown, or until some circumstance be established, such as the failure of the bank, from which it might be inferred. This view is in accordance with the opinion of Judge Story, In the matter of Broion, 2 Story’s1 R. 516. It is the doctrine, too, of the case of Murray v. Judah, 6 Cowen, 484, in which it was decided tQ be incumbent on the holder of a check to present it, but that a demand at any time before suit brought, was sufficient, unless it appeared that the drawer had failed, or that the drawer had in some other way sustained an injury. The plain import of this case is, that it is sufficient for the holder, in the first instance, to prove demand, and this will entitle him to recover, unless the defendant has sustained an injury for want of notice of dishonor. That proof must, of course, come from him, either by showing it directly, or by establishing circumstances from which the law would infer an injury, as the failure of the bank. And then, again, the plaintiff may negative the injury. The holder of a check takes the risk of the failure of the bank by holding it up, but that is the only risk he does take. Conroy v. Warren, 3 Johns. Cas. 259; 3 Kent, 88, 5th ed. The charge then was wrqng. It was an application of a rule of commercial law, which prevails as to bills of exchange, to a check which is a thing not subject to the rule. According to the common understanding as to the object of a check, it is a fraud *21 to draw it without money in deposit. He who gives a check, gives with it also a guaranty that he has the money in bank, and he can have no reasonable ground, in a legal sense, to expect that it will be paid, when he has no funds in bank.
The second charge given was this: “ If the defendant had reasonable ground to believe the check would be paid, and sustained damage or injury by the failure to notify him of the dishonor in due time, the plaintiff cannot recover.” This charge was manifestly wrong, not only for the reasons above given on the preceding charge, but for the further reason, that if the defendant was even injured by the failure to give notice, he was only thereby exonerated to the extent of the injury. A mere partial injury would not entitle him to be exonerated from the whole debt. Story on Prom. Notes, 650, § 492.
The third charge given the jury, was, that if they believed from the evidence, that the Brandon, notes were deposited in bank by the defendant, in consequence of the advice or authority from the plaintiff, and that the plaintiff afterwards took the check, and then knew that it was drawn on the faith of the Brandon notes, which had been deposited, then the defendant was entitled to notice of dishonor, if the check was not paid, and if no such notice was given, they must find for the defendant.
Enough has been said already to show the impropriety of this charge. The “ advice or authority of the plaintiff,” as to the propriety of making the deposit, can have no influence on the question, unless they amounted to an agreement to receive the Brandon notes, and it was not competent to prove such agreement in the manner attempted. The check should have been drawn payable in the Brandon notes. It may be, that in good faith the plaintiff should have received the Brandon notes, but with that question we have nothing to do. But the'charge was moreover wrong in another respect. Even if notice was necessary, the failure to give it only entitled the defendant to be discharged to the amount of injury he actually sustained. He may have suffered a loss, but it may have been inconsiderable. If he lost a fourth, a third, or half the amount of his deposit, *22 such loss would not entitle him to be discharged from the whole debt.
Judgment reversed and cause remanded.