Bell, J.
The brief of counsel for appellant sets out 30 questions of law involved in this appeal. These questions, however, are included in the five assignments of error. The first two assignments attack the overruling by the trial court of defendant’s motions for directed verdict. The other three assignments involve claimed errors in the charge to the jury of the trial court, errors in the admission of evidence, and misconduct on the part of the prosecuting attorney.
The question presented by the first two assignments of error may be stated thusly: Is a postdated check *143 a check within the meaning of Section 1115.23, Revised Code?
A postdated check has been defined thus in 7 Corpus Juris, 674, Section 387.
“A postdated check is one containing a later date than that of delivery. The presumption is that the maker has an inadequate fund in the bank at the time of giving it, but that he will have enough at the date of presentation. Such a check is payable on or at any time after the day of its date, being in effect the same as if it had not been issued until that date.”
Commercially, postdated checks have long been considered checks in Ohio and subject to the law incident thereto rather than to that incident to other forms of negotiable instruments. In Andrew & Wilson v. Blachly & Simpson (1860), 11 Ohio St., 89, it was held in the first paragraph of the syllabus:
“The circumstance that a draft for money, otherwise in the usual form of a check, is payable on a future specified day, is prima facie, but not conclusive evidence that the instrument is a bill of exchange, and as such entitled to days of grace. ’ ’
Brinkerhoff, C. J., speaking for the court, at page 93 said:
“Postdated checks, i. e., checks dated forward of the time at which they are actually drawn and delivered, seem to have been long familiar to the commercial world, and it seems to be universally conceded that they are nonetheless checks on that account, and subject to the legal incidents pertaining to checks only. Allen v. Keeves, 1 East. Rep., 435; Mohawk Bank v. Broderick, 10 Wendell, 304; Salter v. Burt, 20 Wendell, 205.”
In Stewart v. Smith, 17 Ohio St., 82, 85, which involved a check drawn and delivered on May 1, 1861, but dated June 1,1861, this court said:
*144 “The instrument on which this suit is brought is, on its face, a bank check, and not an ordinary bill of exchange. No different form or terms could have impressed that character upon it more clearly. And it does not lose that character by being postdated. Such checks are familiar to the commercial world. Whether they are postdated to suit the convenience of the drawer or that of the drawee, they are still bank checks, and the law applicable to them is the same. The check in this case was intended to be negotiated, and was accordingly made payable to ‘cash or bearer.’ One of the characteristics of bank checks is that they are always supposed to be drawn upon a fund existing at their date in the hands of the drawee, and they are therefore payable on presentation without grace. ’ ’
The criminal statute involved herein covers “any check, draft, or order for the payment of money upon any bank or other depository.” In defining the offense the Legislature used no language having the effect of excepting a check from the operation of the statute merely because it is postdated. Two elements of the offense must be shown: (1) the giving of the check with the present knowledge of the insufficiency of funds or credit with the bank, and (2) the intent to defraud. There is no reason why both these elements may not as well exist in the case of a postdated check as in the case of one bearing the date of its delivery.
All the elements of fraud appear to be in the transaction between defendant and the payee of the check. It is quite clear that on November 3 the payee of the check parted with a house trailer in consideration of the defendant’s payment by check. The defendant knew at the time that neither he nor his corporation had any funds in the drawee bank. Even resolving the conflict in the testimony concerning knowledge of the postdating on the part of payee’s agent in favor *145 of the defendant, or conceding, as defendant contends, that the mere delivery of the postdated check was constructive knowledge that there were no funds in the bank at the time, the delivery of the check by the defendant was a representation by him to the payee that there would he funds in the bank on the day the check was dated.
The statute involved herein has an element of futurity in it which is consistent with the common experience of the business world. It is a matter of common knowledge that in the normal course of business most checks are not presented for payment at the exact time or even upon the day of delivery to the payee. The sufficiency of funds or credit with a bank or depository is determinable at the time of presentment of a check for payment. A maker of a check may well have sufficient funds in a bank to cover a check when it is issued. But he may also have other outstanding checks which because of earlier presentment and payment may deplete those funds below a level which will permit the payment of the particular check upon its later presentment. Of all these conditions a drawer of checks must take account, because a check does not of itself operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the cheek. Section 1307.07, Re-' vised Code.
The above reasoning is even more applicable to the instant case than in the case of insufficient funds, because here neither the defendant nor his company had at the time any funds in the drawee bank, never had had any funds there, and, in spite of the fact that defendant had drawn a very large check on the bank, which was not presentable for payment for two days after issuance, he never deposited any funds in the *146 bank. It is obvious that, at least, there is the statutory prima facie evidence of fraud.
In addition to the fact that there is nothing in the language of Section 1115.23,. Revised Code, which excepts a postdated check from the operation of the statute, an equally complete answer can be found in other statutes. When the provisions of Section 1115.23 were enacted (108 Ohio Laws [pt. 1], 80), the Uniform Negotiable Instruments Act was already in effect in Ohio, having been adopted in 1902 (95 Ohio Laws, 162). We may presume, then, that when the General Assembly enacted Section 1115.23 it had in mind the following definition of a check as set out in Section 1307.03, Revised Code, a part of the Uniform Negotiable Instruments Act:
“A check is a bill of exchange drawn on a bank payable on demand. The provisions of Chapters 1301, 1303,1305 and 1307, of the Revised Code which are applicable to a bill of exchange payable on demand apply to a check.”
A bill of exchange, which a check is defined as being, is defined in Section 1305.02, Revised Code, as follows:
“A bill of exchange is an unconditional order in writing, addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay, on demand or at a fixed or determinable future time, a sum certain in money to order or to bearer.”
It is significant that in neither of these sections is a date mentioned. The essence of both a check and a bill of exchange or draft is that the instrument is an unconditional order in writing to pay a sum certain in money on demand.
A further study of the Uniform Negotiable Instruments Act is enlightening in determining the state of the legislative mind when the provisions of Section *147 1115.23 were enacted. By its very definition a check is made amenable to other sections of the Code pertaining to negotiable instruments in general, including the following sections dealing with the true dating, antedating, postdating and nondating of negotiable instruments :
Section 1301.13: “When the instrument or an acceptance or any indorsement thereon is dated, such date is prima facie the true date of the making, drawing, acceptance, or indorsement.”
Section 1301.14: “The instrument is not invalid for the reason only that it is antedated or postdated, provided this is not done for an illegal or fraudulent purpose. The person to whom an instrument so dated is delivered acquires the title thereto as of the date of delivery. ’ ’
Section 1301.15: “When an instrument expressed to be payable at a fixed period after date is issued undated, or when the acceptance of an instrument payable at a fixed period after sight is undated, any holder may insert therein the true date of issue or acceptance and the instrument shall be payable accordingly. The insertion of a wrong date does not avoid the instrument in the hands of a subsequent holder in due course; but as to him, the date so inserted is to be regarded as the true date.”
The provisions of all these sections were in force in Ohio at the time the provisions of Section 1115.23 were enacted. From those provisions it clearly appears that the General Assembly in enacting the provisions of Section 1115.23 not only did not exclude a postdated check from the purview thereof, but that it very definitely meant to include it.
The trial judge adopted this interpretation of Section 1115.23 and submitted the question to the jury on that basis. A careful review of the court’s instruc *148 tions does not reveal any error therein prejudicial to the defendant. '
The special instructions requested prior to argument by the defendant and refused by the court were to the effect that the mere giving of a postdated check required a finding of not guilty. In the light of our holding herein, the trial court properly refused to give such instructions.
A review of the record reveals no errors in the admission of testimony prejudicial to the defendant.
The last assignment of error urged by the defendant relates to alleged misconduct on the part of the prosecuting attorney.
Defendant quotes in his brief three statements made by the prosecuting attorney in his summation to the jury, which defendant claims amount to misconduct. However, the record reveals that he made only one objection during the course of the prosecuting attorney’s summation. This court held in Scott v. State, 107 Ohio St., 475, 141 N. E., 19, paragraph two of the syllabus:
“Improper remarks of counsel for the state during argument, unless so flagrantly improper as to prevent a fair trial, should be at once objected to and exception taken; otherwise error cannot be predicated upon the remarks alleged to have been improper.”
We have read the entire closing argument of the prosecuting attorney, and, although we may have been somewhat less harsh in our reference to the defendant, we cannot say that the remarks were so flagrantly improper that they prevented a fair trial.
We are aware of a respectable line of authority in the United States holding that a postdated check is not within the contemplation of statutes similar to Section 1115.23, Revised Code. We believe, however, that, in view of the wide use of postdated checks in our business life today. and of their general acceptance in legitimate commerce, a holding contrary to that ex *149 pressed herein would open the door of almost unlimited fraud to the unscrupulous and permit escape from the consquences thereof by the simple device of postdating a check.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Taet, JJ., concur.