MURRAY and MURRAY *against* JUDAH.

Demand of a
check must be
made of the
drawee, before
the holder can sue the drawer.

ASSUMPSIT; tried at the *New-York* circuit, *January* 20th, 1825, before EDWARDS, C. Judge.

No particular time for demand is fixed. It is enough that it be within a reasonable time; and it does not lie with the drawer to object that the demand is too late, unless he has been injured by the delay.

One who has transferred a check or note, is an incompetent witness for the holder, in an action upon it, on the ground that he impliedly warrants his title and the genuineness of the paper; but if he be discharged from his debts under the insolvent act, subsequent to the transfer, this renders him competent.

Whether he be not a competent witness, where the genuiness of the paper is first established by other evidence; and there is no pretence that he wanted title to the paper? *Quere.*

A warranty of title or genuineness by one who transfers negotiable paper, if it turn out to be false, is broken the instant of the transfer; and his liability is taken away by a discharge under the insolvent act, after the transfer, though before the want of title or genuineness be detected.

The drawer of a check is not a surety for the payee, though it be lent to, or drawn for the accommodation of the latter. And, therefore, though a subsequent holder give time to the payee to make payment, he being bound to pay such holder, this will not discharge the drawer, even though such holder know the check was for the payee's accommodation. As between the drawer and the payee and subsequent holder, the drawer is the principal, and the payee the surety.

Though a check be transferred to two, as collateral security for two several debts due to them respectively, yet one alone may sue upon it, and possession by him is, *prima facie,* evidence that the other has sold his interest to him.

In an action for money paid, &c. or money had and received, by the holder of a check against the drawer, the check is, *per se,* conclusive evidence; and the drawer cannot shew in his defence, that money was not had and received by, or paid for him.

A check was transferred by the holder as collateral security for an antecedent debt. Afterwards, the drawer failing, it was appraised, and the creditor took it absolutely, at a sum less than its face, giving the holder credit at the amount of the appraisal. *Held,* that in an action by the creditor against the drawer, this circumstance could not be evidence to diminish the amount of the recovery; that, though the creditor gave less, yet he was entitled to recover according to the face of the check.

The action was to recover the amount of a check, of which the plaintiffs were holders, drawn by the defendant on the Phœnix Bank, payable to bearer, drawn the 8*th*, but post dated the 15*th* of *May*, 1818, for $5000. The declaration contained the common money counts only.

It appeared at the trial, that the check had been duly executed. That at the date of the check, the defendant had in the bank, a little more than $500 ; and that on the 23*d* of *January*, 1820, his account with the bank was closed, and he drew for the balance. He had a considerable running account at the bank, and often had large balances due to him ; and from *June* 15*th* to 18*th*, 1818, he had there $5126,82 ; and if the check had been presented at its date, or within several months afterwards, it would have been paid. The defendant was in good credit till his failure, which was in *July*, 1819.

The defendant moved for a nonsuit, on the ground that no demand of payment was shewn, by the plaintiffs, to have been made at the bank. The judge overruled the motion, and decided that the plaintiffs were entitled to recover the amount which the defendant had in the bank at the date of the check, this operating as a special assignment of that amount to any future holder of the check ; and the withdrawal of the funds was money had and received for the use of the holder. The defendant excepted.

The judge refusing to declare that any future funds, deposited by the defendant in, and drawn from the bank, were, in like manner, money had and received for the holder's use, the plaintiffs excepted.

The plaintiffs then called *I. Foote* as a witness. *Foote* had, on the 10*th* of *May*, 1819, passed the check to the plaintiffs and one *Thomas*, as security for a debt previously due to them respectively, of more than $1,200. But he had been discharged in 1821, under the insolvent act of *April* 12*th*, 1813. Proof of these facts were followed up by the production of the discharge and the proceedings to obtain it. The defendant objected that the witness was incompetent, as he might be liable, notwithstanding his

discharge, in case the check should prove invalid or ineffectual against *Judah*. The objection was overruled, and the witness sworn. The defendant excepted.

*Foote* then testified, that on the 11th of *May*, 1818, he gave his check on the *Manhattan Company*, for $5000, to one *Weston*, who obtained the money, in exchange for the check in question. That his check to *Weston* was a loan, upon the understanding that *Weston* should loan the witness a like sum, for the same length of time. On the day the check in question was due, (it having been post dated the 15th of *May*,) *Weston* requested the witness not to present it to the bank, which the witness agreed to. He saw *Judah* within about 6 months after the check was due; and on his (*J's*) request, promised not to present the check, without letting him know it. There was a general understanding between the witness and *Weston*, that the witness should not present the check. The witness also stated, that when he passed the check to the plaintiffs and *Thomas*, he did not know that it was a lent check. That the defendant promised the witness, that the check should be paid, both before and after the transfer, and after the defendant knew of the transfer to the plaintiffs and *Thomas*. After the defendant's failure, and he believed after the commencement of this suit, the witness went to the *Phœnix* bank, to inquire if there were any funds there; and had the check with him, having procured it from Mr. *Murray* for the purpose.

On cross-examination, he admitted, that before he passed the check, he heard both from *Weston* and the defendant, that the check had been loaned to *Weston* for his accommodation. Another check of the defendant for $5000, dated in *April*, 1818, and negotiated by *Weston* with the witness, had also, at the same time, been transferred to the plaintiffs and *Thomas*; and when the defendant conversed with the witness, he spoke of both checks. On the 29th of *February*, 1820, the witness received a d..ed from *Weston* of land in *Madison* county, and, with the plaintiffs' and *Thomas'* consent, gave up the check dated in *April*, to be cancelled. The land was conveyed for their

benefit. He, at the same time, with the consent of the plaintiffs and *Thomas,* and as part of the arrangement, agreed, under seal with *Weston,* that on his paying $2,-500, with interest thereon, after the lapse of six months, it should be in full of all claims which the witness then had against *Weston;* and that he would give up to *Weston* the check in question. This agreement was produced on the trial. The witness said he understood that if the $2,500 was not paid in 6 months, the check would be good for the whole amount.

The witness farther testified, that on the 31*st* day of *March,* 1821, the check in question, with certain other property, were appraised at $1,250, by agreement between the witness and the plaintiffs and *Thomas;* and that sum placed absolutely to the credit of the witness. That the plaintiffs and *Thomas* then became petitioning creditors for the witness' discharge, to the amount of the balance due after such credit.

He farther stated that he did not inform the plaintiffs, at the time of his passing the check, that the money was raised for *Weston,* or the check for his accommodation.

The defendant now again moved for a nonsuit, on the ground that *Thomas* should have been a party plaintiff with the *Murrays;* and that the check having been lent to *Weston* by the defendant, the general money counts would not reach the case. The judge overruled the motion, on the grounds that the possession of the check by the plaintiffs was, *prima facie,* evidence that *Thomas* had transferred it to them; and that the plaintiffs might recover on the money counts, in the same manner as if they had declared upon the check. The defendant excepted on both points.

*Weston,* who had been discharged under the insolvent act, was then sworn for the defendant; and stated that he borrowed the check in question, on the 11*th* of *May,* 1818, it being post dated the 15*th.* The check was borrowed for witness' exclusive use, and he so told *Foote* when he received it. *Judah* refused to consent to any arrange-

ment, except on the basis of giving up both checks, which the witness repeatedly told *Foote.*

The defendant then offered to prove, by this witness, that the deed of conveyance to *Foote* was in payment of both checks. To this the plaintiffs objected; but the evidence was received, and the plaintiffs excepted.

The witness then swore, that the check in question was liquidated at $2,500; and that it was agreed that the residue of the check should be paid by the conveyance; and it was paid accordingly. On cross-examination, however, he admitted the whole agreement was contained in the writings.

Another witness for the defendant testified to the like effe‥.

*Foote* being again called, after a recess of the court, stated that, on further reflection, he recollected that he had obtained the check in question from Mr. *Murray;* and presented it, before the commencement of this suit.

Considerable contradictory evidence was then given upon the question, whether the check had been originally given on an usurious consideration.

The judge charged that the legal presumption was, that the money for which the check was given, had been paid for the defendant's use, or had and received by him; and that in this case he could not be permitted to shew the contrary. That to constitute usury, there must have been a corrupt agreement to pay more than legal interest for the check; and that both parties must have agreed to the corruption. That the plaintiffs were entitled to recover on the common money counts. That the defendant could not be considered in the light of a surety, though the check was loaned to *Weston;* and though *Foote* knew this when he took it. That the submission to arbitration, between the plaintiffs, *Thomas* and *Foote,* and the award thereon, were no obstacle to the plaintiffs' recovering the same amount as if the award had not been made. That no demand to fulfil the agreement concerning the check made in *February,* 1820, was necessary previous to the commencement of this suit. The defendant excepted upon

all the above points in the charge. The judge also charg-
ed, that the agreement of *February*, 1820, was no bar to
the plaintiffs' recovery ; and left it to the jury to pass up-
on the contradictory evidence concerning the usury.

Verdict for the plaintiffs, for $3207,29.

*J. O. Hoffman*, for the defendant, moved for a new tri-
al. He said the plaintiffs ought to have been nonsuited at
the close of their testimony, no presentation of the check
having been proved. (3 *John. Cas.* 5, 260. 12 *East*,
170. 7 *East*, 359. 15 *East*, 220.) By the authorities
cited, it will be seen that a check is considered a bill of ex-
change ; and that both demand and refusal of payment,
and notice of these to the drawer, are necessary, before a
suit can be sustained against him, unless there be a total
want of funds in the hands of the drawee.

*Foote* was not a competent witness. (1 *Phil. Ev.* 47,
53. 6 *John.* 5. 11 *John.* 57.) He was a warrantor of
the genuineness and validity of the check in the hands of
the plaintiffs ; who, on failing in this suit, may go against
him ; and the very record here will be evidence. The
discharge does not destroy his interest ; for his liability
was contingent at the time when that discharge was ob-
tained.

Any defence which might have been made against *Foote*,
is equally available against the present plaintiffs ; and any
defence of *Weston*, is equally the right of the defendant.

If the plaintiffs are entitled to recover at all, it can only
be to the amount which they paid for the check.

*Thomas* should have been a party. The suit is not on
the check ; but for money had and received ; and the
check was transferred for the joint benefit of the plaintiffs
and *Thomas*.

The check was an accommodation check, and so known
to be. The defendant, then, was only a surety ; and the
extension of credit released his responsibility. The de-
fendant never assented to the giving of credit.

The plaintiffs having taken the check merely as collat-
eral security, cannot be deemed *bona fide* holders in the
fair course of trade. (5 *John. Ch. Rep.* 54.)

*H. D. & R. Sedgwick*, contra. The general counts are always sufficient against any party to negotiable paper. (12 *John.* 90.)    And the holder of such paper is always, *prima facie*, the owner.    (11 *John.* 52.    3 *Cowen*, 260.) The defendant signed the check as a principal ; and this act estops him from now setting up the fact, that he was surety merely ; especially as to third persons, holding the security which he has put afloat.    (17 *John.* 169.) But he has not shown himself to be a surety.    If he is to be regarded as the drawer for the accommodation of *Weston*, the giving of time will not discharge him.    This was directly decided in *Fentum* v. *Pocock*, (5 *Taunt.* 192.) True, that case was decided of an acceptor for accommodation ; but the principle is the same.    *Carstairs* v. *Rolleston*, (*id.* 551,) was a still stronger case.    There, a maker of a note for the endorser's accommodation, was held not to be discharged by a release of the endorser. The rights of parties must always be taken as they appear upon the written contract they have formed.

All *Foote's* liability, as warrantor, or otherwise, was gone by the discharge.

*Curia, per* SUTHERLAND, J.    The first point, made on the part of the defendant is, that the motion for a nonsuit ought to have been granted ; no demand of payment of the check at the bank having been then proved.

It is a sufficient answer to this point, that a demand was subsequently proved.    That such demand was necessary to entitle the plaintiffs to recover from the drawer, is well established.    A check is, in form and effect, a bill of exchange.    It is not a direct promise by the drawer to pay money ; but it is an undertaking on his part, that the drawee shall accept and pay ; and the drawer is answerable, only in the event of the failure of the drawee to pay.    As a general rule, therefore, a check is not due from the drawer, until payment has been demanded from the drawee, and refused by him.    As between the holder of a check, and an endorser, or third person, payment must be demanded within a reasonable time.    But as between the holder, and the maker or drawer, a demand at any time

before suit brought is sufficient, unless it appear that the drawee has failed, or the drawer has, in some other manner, sustained injury by the delay. These principles are recognized and established by this court, in *Cruger* v. *Armstrong*, (3 *John. Cas.* 5,) and *Conroy* v. *Warren*, (*id.* 259.)

2. *Foote* was a competent witness. The regularity and validity of his discharge as an insolvent, were not questioned. That discharge took place in 1821, and he passed the check in question to the plaintiffs in 1819. The objection seems to be, that *Foote* was responsible upon the implied warranty of the genuineness of the check, and of his own title to it ; which, it has repeatedly been held, accompanies the transfer of all negotiable paper. (*Herrick* v. *Whitney*, 15 *John.* 240. *Shaver* v. *Ehle*, 16 *John.* 201. 6 *John.* 5.) But I am inclined to think, that any cause of action arising from the forgery of the check, if it should prove to be forged, must be considered as having accrued to the plaintiffs at the time when they received the check, and not when the forgery might be detected. (*Utica Bank* v. *Childs*, 6 *Cowen*, 238.) If this is so, then the discharge terminated all interest on the part of *Foote*.

But it is to be remarked, that *Foote* was not called to prove the execution of the note. That had been previously established ; and, in this respect, the case is distinguishable from those of *Herrick* v. *Whitney*, and *Shaver* v. *Ehle* ; where the witnesses were called to prove the execution of the instruments which they had transferred, and, by implication of law, warranted. The principle itself is a strictly technical one, and not to be extended to cases which do not fall within the reason on which it has been adopted. I am aware of the general rule, that where a witness has a direct interest in the event of a cause, he cannot be admitted to testify as to any matter on which the jury are to pass, in favor of such interest. (*Butler* v. *Warren*, 11 *John.* 57.) But it appears to me to be worthy of consideration, whether the class of cases which we are now considering, ought not to be considered an exception to this rule : and whether a party who has transferred a negotia-

ble instrument, after its execution and genuineness have been established, and there is no pretence that he had not a right to transfer it, ought not be considered a competent witness for every other purpose. (*Williams* v. *Matthews,* 3 *Cowen,* 252.) I do not, however, intend to put the competency of the witness on that ground ; but on the ground that his discharge terminated his interest.

3. It is contended, that *Foote* knew this to be an accommodation check when he took it ; that the defendant, therefore, stands in the light of a surety, and is discharged by the extension of credit given to *Weston ;* and by the arrangement of the 29*th* of *February,* 1820, made between him and *Foote.* The judge decided that it was immaterial whether *Foote* knew it to be an accommodation check, or not. If he did, it would not entitle *Judah* to the privileges of a surety.

The acceptor of a bill of exchange, is undoubtedly the principal debtor, and the drawer the surety, though it be accepted without consideration, and for the sole accommodation of the drawer ; and nothing will discharge the acceptor but payment or a release. Lord *Ellenborough* certainly fell into an error, when he held a contrary doctrine in *Laxton* v. *Peat,* (2 *Campb.* 185,) and *Collott* v. *Haigh,* (3 *Campb.* 281.) These cases were subsequently overruled by *Gibbs,* J. in *Kerrison* v. *Cooke,* (3 *Campb.* 362,) and by *Mansfield,* Ch. J. in *Fentum* v. *Pocock,* (5 *Taunt.* 192,) and *Carstairs* v. *Rolleston,* (5 *Taunt.* 551.)

But here the drawer complains that time was given, not to the drawee, but to *Weston,* the payee of the bill. Now, that was an act by which the defendant could not possibly be injured ; for he could never have a right of action upon this check against *Weston.* I know no case in which it has ever been held, that giving time to the payee or endorser, even of an accommodation bill, will discharge the drawer. As between the drawer, the payee and the holder, the drawer is unquestionably the principal, and the payee the surety. (*Claridge* v. *Dalton,* 4 *M. & S.* 226, 232, 3, *per Bayley, J. And see Seymour* v. *Minturn,* 17

*John.* 169.) The opinion of the judge, therefore, upon this point, was correct.

4. The judge was correct in holding that the possession of the check by the plaintiffs, was evidence that *Thomas* had transferred to them whatever interest he had in it. The check was also evidence of money had and received by the drawer to the use of the holder, and of money paid by the holder to the use of the maker. Both these points are fully considered and settled in *Pierce* v. *Crafts*, (12 *John.* 90.)

5. The award as to the value of the check between the plaintiffs and *Foote*, did not affect their right to recover against the defendant. It was merely a mode of ascertaining its value, for the purpose of enabling the plaintiffs to become petitioners for *Foote*, for the balance. It was a transaction with which the defendant has no concern. It was not an agreement on the part of the plaintiffs to collect no more than the amount at which the check was appraised, from *Judah*. It was merely evidence satisfactory for the object in view ; that that was the whole amount which probably could be collected.

From the amount of the verdict, I presume the plaintiffs recovered upon the basis that, by the arrangement of the 29*th* of *February*, 1820, $2,500 of the check were absolutely paid. It is unnecessary, therefore, to consider whether the parol evidence in relation to that settlement was properly admitted, as the defendant has had the benefit of it, and the plaintiffs do not ask for a new trial.

On the whole, I think the motion for a new trial must be denied.

New trial denied.