ALANSON TRASK and another *v.* WARWICK MARTIN and another.

A bill of exchange, drawn payable at sight, (in the absence of evidence of any particular local custom of the place where it is payable,) is due and payable on presentment to the drawee.

It is not settled, that by the general principles of commercial law, days of grace are allowed on bills payable at sight.' The instrument is, therefore, to be construed according to the natural and ordinary import of the language employed.

Bills payable in terms on demand—bills having no time of payment specified—and bank checks, are well settled to be due and payable instantly on presentment.

The only harmonious rule on the subject of days of grace, would seem to be, that where time of payment is in terms given to the drawee—as after sight or after date, or by naming a future day—days of grace are to be computed and allowed to him ; but where the *terms* of the bill import immediate payment *on presentation*, its terms are, in this respect, to be pursued.

*It seems*, that a local custom or usage of the place where it is payable, (if any exist,) allowing days of grace on such a bill, may be shown.

THIS was an action of assumpsit, brought before the adoption of the code, by the payees of a bill of exchange against the drawers. The first trial took place before INGRAHAM, FIRST J., and resulted in a judgment of nonsuit, from which the plaintiffs appealed. The cause was heard at a general term, and the court directed a new trial. This decision was made in 1851.

Upon a second trial, the plaintiffs recovered judgment for the amount of the bill, ($713 14, with costs,) and the case now came up upon an appeal taken by the defendants.

The facts upon which the question involved in the case arose, are stated in the opinion. (*a*)

(*a*) NOTE BY REPORTER.—The point raised in this cause, was determined by the decision of the general term, upon the plaintiffs' appeal in 1851. But by postponing its publication to a later stage in the progress of the work, the reporter has been enabled to present the opinion, as revised upon the final disposition of the case in January, 1854. INGRAHAM, FIRST J., dissented from the other members of the court, and was of the opinion that the defendants were entitled to recover.

*Edwards Pierrepont*, for the defendants.

*Edmund Terry* and *Clarkson N. Potter*, for the plaintiffs.

By the Court. Woodruff, J.—This case is now presented for our consideration, upon an appeal from the judgment rendered in favor of the plaintiffs at the special term.

There was, upon the trial, no dispute about the facts. The action is founded upon a bill of exchange, drawn upon J. S. Lake & Co., of the city of New York, payable at sight, to the order of the plaintiffs. The copartnership of the defendants —the drawing of the bill by them—the title of the plaintiffs thereto—the presentment thereof to the drawees, and demand of payment made on such presentment—their refusal to pay—the protest for non-payment, and due notice to the defendants of such demand, refusal, and protest—were all conceded.

The action is defended on the sole ground, that upon such a bill, three days of grace are to be allowed, and, therefore, that the bill should have been first presented for acceptance, and three days thereafter have been suffered to elapse, before demand of payment was proper.

The insufficiency of this defence was fully considered by this court, when the order was made herein, setting aside the nonsuit. The trial afterwards had did not change the aspect of the case, as then presented, nor raise any additional questions, nor was any proof offered by either party which can affect the result. My opinion given upon that occasion may, therefore, (with slight alterations, adapting it to the case in the form now presented,) be taken as my opinion upon this appeal.

It would seem hardly credible, that at this day doubt should exist regarding the question whether a bill of exchange, drawn payable at sight, is due on presentment, or on the third day thereafter. Had it depended upon the deductions of reason, or on the principles of the law viewed as a science, a question of such every day application to the business of a commercial state, would have been long since settled.

This, however, is the only question raised by the bill of exceptions in the present case.

A mercantile contract is, *prima facie*, to be construed like every other contract, according to the plain and ordinary meaning of the language employed therein, unless, by immemorial usage of universal acceptation, its import has received some modification. Of this *prima facie* meaning, whether founded upon such obvious *import* of the *words*, or on such usage, the court are to judge, and no proof can be received.

Such contracts are, nevertheless, to be deemed made with reference to the usages and customs of the place where they are to be performed, and the subject matter to which they refer; and, therefore, a local custom, or a peculiar technical term or phrase (whose meaning is not already settled in the law) may be the subject of proof by witnesses to ascertain and fix the real intent and meaning of the contracting parties.

The language of a bill of exchange, on its *face*, expresses a simple request that the drawee will pay a certain sum of money to the payee, or to some person to be designated by him, at a time in the bill mentioned.

But, by universal acceptation, recognized for more than three hundred years, the drawing of a bill implies that the drawee shall legally accept the bill, and pay it on presentment, when it becomes due; and if not, then that the drawee will, on due notice, pay the same, with damages, &c. Thus far the obligation of the drawer and the correlative duty of the holder to present and to give notice, are simple, and though grafted upon the *words* of the bill, are in *entire harmony* with their literal import.

Commercial usage has, however, introduced an element to be taken into view in determining *when* a bill does in fact become due, which is *not* in accordance with the language of the bill, by the allowance of days of grace. In the cases to which such usage applies, it has, by long acquiescence and universal recognition, become *law*, so truly that the allowance of such days, *forms a part of the contract*.

The period of such allowance is not *uniform*—it depends upon the law of the place where the bill is payable. It even depends upon the *local customs* of the particular *town* or *city*

where the bill is payable.   In England and in this country, these days have so long and so often been recognized as three in number, that three will be presumed the true number in this country, until a clear case of *local custom* binding on the drawer is shown, establishing a different number.   This local custom has in some cases been shown.   (*Remsen* v. *Bk. of Columbia*, 9 Wheat. 581 ; *Mills* v. *Bank of United States*, 11 Wheat. 431; *Bk. of Washington* v. *Triplet*, 1 Pet. 30, &c.)

The *principle*, then, that days of *grace* are *allowed*, *so far as such principle is settled*, enters into the bill itself, and forms a part of the contract, *differing from its terms*.   The number of those days is presumed to be *three*, until a local usage to the contrary, binding upon the parties, is established by proof.

But it does not necessarily follow that EVERY instrument which is in form and effect a bill of exchange, has days of grace allowed for its payment.

However such allowance originated, whether in the indulgence of the holder or otherwise, it became at last the *right* of the drawee.   But it is in *contradiction* of the terms of the bill, and a departure from its plain import.   So far as the usage allowing such departure has ripened into law; so far as this departure has been recognized and approved ; so far, and so far only, should it prevail against the otherwise obvious meaning of the language.

The *language* of a bill of exchange, payable at sight, requires that it should be paid when exhibited to the drawee.

Is it payable according to its purport, or does that usage, which has now become *law*, embrace such a bill, and alter its otherwise legal meaning ?   *Prima facie*, as already remarked, the language of the bill should govern.   This rule of construction is applicable as much to commercial contracts as to any others.

If the *language* is to be controlled and modified by *usage*, it may be,

1st.   By a usage so ancient and so universal as to form a part of the general law applicable to the subject—or,

2d.   As usage of a particular place, uniform within its limits,

Trask v. Martin.

creating an exception to the general rule, and to be ascertained by inquiry and proof.

In the case before us, *both* parties thought proper to rest their claims upon settled principles of commercial law, without offering testimony to show the existence of any particular custom in the city of New York, creating an *exception;* and our present inquiry, therefore, is, whether the language of the bill in question is controlled or modified by a usage of the description *first* designated.

It has been suggested that the case of *Woodruff* v. *Merchants' Bank,* (25 Wend. 673, and S. C. in Error, 6 Hill, 174,) forbids any *proof* of a local custom. It will suffice to say of that case, that the opinion first declares that the bill in question, being payable sixty days after date, was not a bank check, but a bill of exchange, and, therefore, that the witnesses who testified that, by the custom of merchants in New York, *it* was not entitled to days of grace, had misapprehended its character; and then adds, that the effect of the proof of usage, as given on that trial, would be to *overturn the whole law on the subject of bills of exchange in the city of New York.* And the offer, on the second trial, was to prove that the bill was not a bill of exchange, but a bank check, and so not entitled to days of grace. The opinion given in the court of errors is not reported, but I do not think the court intended to hold that *local customs* can never be given in evidence to affect the construction and effect of commercial contracts presumptively made in view of such customs. To do this would destroy the foundation upon which the allowance of days of grace in any case originally depended, and in which all the peculiarities which distinguish the law merchant, from the law applied to what are termed common law contracts, *originated.*

The case itself called for nothing more than the opinion that the construction and effect of a *bill of exchange,* payable at a bank, was to be governed by the same *general rules* as a bill payable elsewhere in the city of New York; or that a custom of a particular class in a city, could not alter the general mer-

cantile law prevailing there, as known and recognized by all other classes.

But if this decision be taken to have a broader signification, it will be observed that it rests upon, and is limited by, this single proposition: That a usage *in the city of New York* cannot be allowed to control *the settled and acknowledged law of the state*, in respect to an instrument which by such law is declared to be a bill of exchange and not a bank check.

In the view which I have taken of the case now under consideration, it is not necessary, and it might not perhaps be proper, for us to question this proposition. No proof in relation to usage was offered on the trial; and we are left to the inquiry whether the language of the contract is to govern in this case, or whether there is a settled, acknowledged law, controlling and modifying the *prima facie* import of that language, and extending the time of payment by the allowance of three days of grace.

The following series of propositions furnish a condensed view of the subject :

*First*. The words "please pay at sight," or "ten days after sight," or "ten days after date," or "at a future day named," or "on demand," all alike import a definite fixed time of payment; the *first* and the *last* named meaning at the precise time the bill is exhibited for that purpose, and the others meaning on the tenth or other designated day.

*Second*. Just so far as the allowance of days of grace has been established by usage and recognized as law, so far it enters into and forms a part of the bill, and modifies such *prima facie* import.

*Third*. In the earliest history of days of grace, and from thence onward to the present day, they have been allowed upon bills payable after date, or after sight, or at a future day named.

*Fourth*. As title to this allowance is founded upon custom and recognition, *against* the otherwise plain meaning of the contract, such allowance can be claimed only so far as the custom is shown, or has been recognized.

*Fifth.* Such usage does not embrace *all* bills of exchange. In this particular, the dictum in *The Bank of Washington* v. *Triplet*, (1 Pet. 31,) was too broad. It was there said that this usage, and the allowance of days of grace, enters into every bill or note of a "mercantile character ;" whereas,

*Sixth.* Bills payable in terms on demand, bills having no time of payment specified, goldsmith's bills and bank checks, are well settled to be due and payable instantly on presentment. (1 Bell Com. 410; 1 Wheat. Selwyn, 344; Arch. N. P. (65) 89; Byles, (192); 3 Kent Com. 102; Story on Bills, § 342, &c.; 2 McCord, 246; 13 Mass. 131; 2 Caines, 369; 8 Johns. R. 189; 1 Cow. 408; 6 Cow. 484; 2 Hall Spr. Ct. R. 459; 10 Wend. 304; 20 Wend. 205; 21 Wend. 375.)

*Seventh.* Nothing, therefore, can be inferred respecting bills payable *at sight*, from the conceded fact, that bills payable *after* sight or after date, or at a future day, have days of grace, so long as it is no less clearly settled that bills payable on demand, or without any day of payment named therein, have no days of grace. On the contrary, if analogy furnished any guide, we should say that the terms, " at sight," no less decidedly indicated, *on the very instant*, than " on demand," and there would seem to be no more reason for allowing days of grace in the one case than in the other; and in conformity with this view, Montefiori, in the Appendix to his Commercial and Notarial Precedents, says, " a bill at sight is to be considered as a bill payable *on demand*, they being both payable, by the present custom of merchants, on presentment, without any days of grace."

Indeed, the only harmonious rule, applicable to these different forms of expression, would seem to be : When the terms of the bill give *time*, the acceptor may take days of grace. When the language of the bill requires immediate payment, its language shall prevail.

*Eighth.* Unless, then, it is affirmatively settled by commercial usage, recognized in such wise, that courts of justice can judicially declare it to be law, that bills drawn at sight are entitled to days of grace, we must (in the absence of any proof

Trask v. Martin.

of a valid local custom) adhere to the plain and natural import of the bill, and hold it payable on presentment for that purpose.

Our inquiry, therefore, is,

Has it been settled by authority which should be deemed conclusive by us, that bills at sight are entitled to days of grace?

We may at the outset remark, that it is a significant fact, that (excepting the recent case of *Nimick* v. *Martin*, in the supreme court of Louisiana, referred to in U. S. Monthly Law Mag., vol. 1st, No. 1, for January, 1850, which arose upon a bill drawn by the same parties as the present, and in which, upon actual proof of the custom, it appears to have been decided that days of grace are not allowed) counsel who have displayed in this cause great ability and research, have not pointed us to a single reported case, in which the action was upon a sight bill, where it appeared (even as a part of the *history* of the bill) that days of grace were in *fact* claimed or taken, nor in which there is any decision or claim that they ought to be allowed; and in the whole range of litigation upon commercial paper, we have not been able to find such a decision or claim.

It is not enough to say, that *it was never before doubted*, or that a case *to the contrary* has not been found. The *former* assertion is not true in fact—it *has* been doubted for at least a century and a half, and as to the *latter*, it is sufficient to say, that to establish a construction at variance with the plain meaning of the language, the burthen lies upon him who insists upon the departure.

Recent elementary writers on this subject do undoubtedly express the opinion that the weight of authority is in favor of allowing days of grace on bills at sight, and some of these are of such distinguished reputation that their deliberate judgment upon questions of commercial law is not only of great weight, but ought not to be disregarded, unless it is by themselves professedly based upon authority, which on examination seems unsatisfactory.

Thus, the late learned Chancellor Kent, in his Commentaries, vol. 3, part v. lecture 44, says, the three days of grace apply equally to bills payable *at sight*, or at a certain time. (Cites Bailey on Bills, 141 ; Chitty, 334–5.)

But a note to this proposition, found in the 6th edition, p. 102, says, " it may be considered as a point not entirely settled."

The late distinguished Justice Story, in his work on Bills, § 342, after suggesting that there has been some diversity of opinion, adds : " But the doctrine *seems now* well established both in England and America, that days of grace are allowable on such bills. (Refers to Chitty, Bailey & Selw., N. P., and cases there cited.) But in a note to § 228, he states, that in England the *old writers held*, that no days of grace were allowed.

In Wheaton's Selyn., at p. 344, (ed. of 1827,) it is said, " the weight of authority is in favor of such an allowance ;" but this observation is preceded by the significant remark : " I am not aware that it has ever been solemnly *decided*." And for what is here deemed the " weight of the authority," the reader is referred by him to the dicta collected in Chitty on Bills.

Chitty, in the editions of his work published since 1826, after observing as he had in his former editions, that "though it should seem payment ought to be made immediately on presentment, it is not so settled ; decisions and treatises differ on the question," adds, " but it *appears* now to be *considered* as settled that days of grace are to be allowed, and cites Bailey, Selwyn and Forbes, and the cases below mentioned.

John W. Smith, in his treatise on mercantile law, written in 1834, states the proposition somewhat more boldly : " A bill or note payable after date, after sight, or at sight, is not payable till three days afterwards."

In the later editions of Bailey on Bills, (*vide* p. 233, and notes to Am. ed. of 1836, from Lond. ed. of 1830,) bills at sight are grouped with other bills, and are said not to be payable until the last day of grace ; and the cases below referred

to, (*Coleman* v. *Sayer* and *Jansen* v. *Thomas*,) are relied upon as authority for the remark.

In Forbes on Bills, the same proposition is stated.

In Viner's Abr., Tit. Bills of Exch., B., a reference is made to the case of *Coleman* v. *Sayer*, (which will be presently noticed ;) and the proposition reported in Barnardiston, as decided in that case, viz., that three days grace are allowable as well where a bill is payable at certain days after sight, as where it is payable upon sight, is recited by Viner without comment.

To a similar purport is an observation found at page (65) 89 of Archibold's Nisi Prius.

On a careful attention to the citations, upon which the remarks on this subject, above referred to, are founded, it will be seen that these authors respectively repose very much upon *each other*, and that the recent editions of Chitty and Bailey are especially relied upon.

Besides, it is manifest that none of these writers, unless it be Bailey, state the rule as of their own judgment, respecting a rule of law, but only as the better opinion of others. If it should appear that there is no warrant for this "better opinion," except what is created by *quoting one another*, these dicta of writers, who, when they speak independently, are entitled to great respect, cease to bear with much weight upon the decision of the question.

Other law writers have deemed the proposition doubtful, and some have *denied* it altogether.

Roscoe on Bills, after repeating what is said by Beawes, denying that bills at sight are allowed days of grace, adds, without comment, "but there are *several* authorities to show that days of grace should be allowed on such bills here." (Roscoe on Bills, Ed. of 1829, p. 164.)

Byles on Bills, (which was written in 1829, 1st Am. ed., p. 152,) very doubtingly says, "Whether days of grace are allowed on bills payable at sight, seems yet *undecided*. The weight of authority *has been considered*, (*i. e.*, by Selwyn, which

Trask v. Martin.

is cited for the remark,) *to incline* in favor of such an allowance."

Maxwell on Bills, republished in this country from the Lond. ed., with additions, in 1808, states thus: "It does *not* appear to be determined whether days of grace are allowed on bills payable at sight; all writers, except Montefiori, express *doubt*, and the weight of judicial decision and high authority, if they *do not* make the scale preponderate in favor of the affirmative of this question, are *sufficient* at least to raise a *doubt* on the subject."

Montefiori, on the other hand, (as referred to above,) says, " a bill at sight is to be considered as a bill payable on demand, they being both payable, by the present custom of merchants, on presentment without any days of grace."

1 Bell Com., ed. of 1826, p. 410, after stating that if a bill be payable on demand, *no* days of grace are allowed, adds, " when the *bill* is payable at sight it does not seem settled whether days of grace are allowed or not ;" and again, " but it is still considered as a point unsettled."

A *note* to this part of the text refers to Chitty, Bailey and Selwyn, and faintly adds, in reliance upon these writers, " the *bias* of authority *seems* to *favor* the indulgence of days of grace."

I have not been able to examine an early edition of Bailey on Bills, but Mr. Chitty, in his 2d edition, (reprinted in this country, under the editorial supervision of Judge Story, in 1809,) quotes Bailey as evidence that the rule is *unsettled*, and in Chitty's 6th edition, the 2d and 3d editions of Bailey are referred to for the same purpose.

The work of Mr. Chitty himself, from his first edition to the sixth, *i. e.*, from 1799 to 1826, uniformly declares the question to be *open* and *unsettled*.

To these are to be added, Beawes' Lex Mercatoria, pl. 256, where the writer (himself a merchant of wide experience both in England and on the Continent, and frequently cited as authority on mercantile customs) states, in 1761, in unqualified terms, that days of grace are not allowed upon such bills.

And Mr. Kyd, whose work on bills, published in 1790, is said to contain the substance of *all* the judicial decisions down to that time, in like manner states, that bills payable at sight are *not* entitled to days of grace.

I do not, where elementary writers differ so widely, deem it unbecoming to add, that the late distinguished Judge Gould, of Connecticut, than whom this country has produced few more skilled in the learning of the law, or more versed in its science, in his manuscript Commentaries, says, " bills payable at sight are not entitled to grace."

Upon this comparison of what is said by various elementary writers, it becomes interesting to inquire, upon what their dicta are founded? Looking at these dicta *alone*, it would seem that although for centuries prior to 1826, or thereabouts, it had either been declared doubtful or unqualifiedly denied, that bills at sight are entitled to days of grace, yet that about that time something occurred which is deemed to have made the "*bias*" of authority "*incline*" in favor of such allowance.

In pursuing the inquiry, it may be regarded as not a little remarkable, that all the treatises (which give *any* authority for what they contain, other than similar dicta from the other books, which I have also named above) rely upon precisely the same three cases, and no others—all of which were decided before Mr. Kyd wrote in 1790, and of course before the early editions of Chitty and Bailey. And yet in neither of these cases was the point now in question at all necessary to the determination of the case before the court, and there is much reason to believe it was neither raised nor decided in either.

The three cases referred to, are *Dehers* v. *Harriot*, 1 Shower, 164, decided in 1692; *Coleman* v. *Sayer*, 1 Barnardiston, K. B. R. 303, decided in 1728 ; and *Jansen* v. *Thomas*, 3 Doug. 421, decided in 1784, in which case Justice Buller mentions that on some former occasion a special jury certified that on bills payable at sight three days were allowed.

The first of these cases, *Dehers* v. *Harriot*, did not involve *any* question regarding *bills at sight*, nor days of grace. A bill was drawn payable to A., endorsed by A. to B., and *some*

*time after the bill* had become *due*, B. endorsed it to D., with the additional words, " value on my account." After such last named endorsement, and before presentment for payment, the bill was lost, and a copy was presented, and not being paid, protest was made by such copy. Two questions appear to have been presented to the court, and two only :

*1st.* Whether B. could sue on the bill, notwithstanding his qualified endorsement to D. ?

*2d.* Whether, if a bill be lost, protest may be by copy ? And these appear to have been the only questions decided.

It is obvious, therefore, that no question touching days of grace was passed upon, nor was the bill then before the court payable at sight. And yet there appears, by way of " *note by* the reporter," the following observation, which is all that furnishes an apology for citing the case as authority in this matter.

" Some merchants said, if a bill be negotiated by endorsement after the bill was payable, there was no need of protest at all. Others said that a protest must be in some convenient time. All agreed that if there be an acceptance, the protest must be at the day of payment; if at sight, then at the third day of grace, and that a bill negotiated after day of payment, is like a bill payable at sight."

The rambling conversation of the jury, set down as a memorandum on the reporter's minutes, could not in any case be regarded as authority, and especially when the point was not before the court.

In the next place, this volume having been prepared for the press and printed after the reporter's death, it is very doubtful whether the note has even the sanction of his name.

Further, it is now entirely clear that the first proposition in the note is not law; and it is no less certain, that if " a bill negotiated after day of payment is like a bill payable at sight," then a bill at sight has no days of grace, for a bill so negotiated has *none*. The case to which the note is appended shows this—and see, also, 1 Bell Com. B. 3, ch. 2, § 4, p. 403 ; 1 Sandf. Supr. Ct. Rep. 202, and cases cited.

The next case, *Coleman* v. *Sayer*, arose as follows : An action was brought against the defendant as endorser of a bill of exchange, payable *six days after sight.*

The bill was presented for acceptance, and accepted on the 8*th* of February ; on the 19*th* the acceptor failed, the bill not having before that time been tendered for payment.

It is said in the report of the case, in 2 Strange, 829, that the jury were of opinion that the *drawer* was discharged at the end of the three days of grace. No question was made whether days of grace were allowable, but the holder appears to have claimed that even *more* indulgence might be granted to the acceptor without losing his recourse to prior parties.

But the report, as given in Barnardiston, *states two questions, neither* of which (if the facts are correctly stated by Strange) were pertinent, nor could they have affected the result, however they were answered.

1*st.* Whether the day of sight is to be reckoned one of the six ?

2*d.* Whether the three days are allowable by the custom of London, as well where a bill is payable at certain days after sight, as where it is payable upon sight ?

The chief justice is reported to have said that " the days of grace were allowable in one case as as well the other."

Obviously *no* answer to these questions could have entitled the holder of the bill to recover.

If days of grace were allowed, (as appears by the report in Strange they were,) he was in default. If not allowed, his laches were still greater.

If the case be of any importance whatever to this discussion, it is because, according to the report in Barnardiston, it would seem to have been *taken for granted* that bills at sight were entitled to days of grace.

Taking for granted a matter which cannot affect the decision of the case in hand, and which, therefore, no one has any interest to scrutinize or deny, never amounts to authority of any weight.

On comparing the two reports of this case, it is exceedingly

doubtful whether the report in Barnardiston is not altogether a *mistake*, and if not, then it is an *obiter dictum* uncalled for and immaterial, and entitled to little consideration.

When to these considerations there are added the criticisms which may be found in "The Reporters," by Wallace, Phil., 1845; and in Marvin's Bibliographia Legum, pp. 93–4 and 646, on the degree of credit to be given to Shower and Barnardiston's Reports, it seems to me that no weight should be given to them on this question.

And again, if there had been an adjudication in 1728, not overruled, which is now entitled to be regarded as an authority on the subject, it is very extraordinary that Lord Mansfield, in 1784, should have stated the matter to be in "great doubt," without noticing the fact that such an adjudication was ever made.

The third and only remaining case is *Jansen* v. *Thomas*, 3 Doug. 421, (cited by Chitty and Bailey as *I'Anson* v. *Thomas*, B. R. Trin. Term, 24 Geo. III.,) which was decided in 1784.

The distinct and only question was, whether a bill at sight was within the stamp act of 22d Geo. III., that act having in terms *excepted* "bills payable on demand."

It was contended that bills drawn payable at sight were in *fact* payable on demand, not being entitled to grace, and so by implication were within the *exception*.

Lord Mansfield says distinctly, "I believe there is great doubt as to the usage about the three days of grace. But the *words* of the act are 'on demand,' and I think we cannot make a further exception by implication." Ashhurst, J.: "I am of the same opinion. We had better go upon the words of the act than *make a precedent* which may affect trade;" and Buller, J., says, "I think payable on demand is the same as '*drawn* payable on demand.'"

Clearly this case settles nothing, unless it be, that there was *then no* established custom to allow days of grace on such bills. It is true that Buller adds, "the other point is *doubtful*, but it is not new," and mentions that some forty years before, a special jury had certified, that on bills at sight, three days were

allowed.   And he says, also, he knows they now *differ* about it in the city, but in general it is taken.

If these cases settled the law on this subject to be as now stated by Chitty, it is passing strange that Beawes, in 1761, Kyd, in 1790, Bailey, in 1789, and Mr. Chitty himself, in 1799, should not have known and appreciated their value as authority.   And especially that Sergt. Bailey, through at least *three* editions, and Mr. Chitty through *six*, coming down to a late day, should have remained so unconscious of the error in all that preceded.

It does not appear that a case had been adjudicated since 1784, in which the subject had been alluded to, and yet with no new authority—apparently *ex mero motu*—Sergt. Bailey alters his text so as to induce the belief that this doctrine was now settled.   Mr. Chitty thereupon states the same thing, taking care to cite the last edition of Bailey as his warrant for altering his own text.

Justice Story, following Chitty, states that so " it seems ;" and the learned Chancellor Kent adopts language somewhat more positive, while a note informs the reader that it is *not* entirely settled.

Upon this review of dicta and alleged decisions, it appears to me that we cannot say that by law, days of grace are allowable upon a bill at sight.

I ought, however, to admit that Judge Strawbridge, of the Supreme Court of Louisiana, is reported to have said upon this question, in the above mentioned case of *Ninnick* v. *Martin*, " that as an abstract question of the common law, he had not doubted for the last thirty years that such bills were entitled to grace."   With great respect for the learned judge, it may be questioned, whether a paragraph on the subject could, thirty years before, have been found in which doubt was not expressed upon the subject, except where the doctrine was *denied*.   And if the convictions of his own mind were *then* settled by *authority*, we regret that the cases or dicta which removed the uncertainty, have not come under our observation.

I do not deem it unbecoming to doubt what Beawes, Kyd,

and Montefiori in the last century denied; what Lord Mansfield and his associates all doubted in 1784; what Chitty and Bailey, for nearly thirty years, declared unsettled; what Maxwell deemed undetermined in 1808; what Byles, in 1829, says, seems yet undecided; what is declared unsettled in the last edition of Kent; what the other writers named, mention with so much of indecision and qualification; and what has not been decided in any adjudged case that is brought to our notice, and especially what has never, so far as can be learned from reported cases, been acted upon as law in England nor in this state.

In Massachusetts, where days of grace are allowed on such bills, there is a statute making express provision therefor. It has been suggested that this statute is declaratory of the common law. This suggestion is hardly warranted. The supreme court of that state had, before their statute was enacted, decided, that in that state no days of grace were allowed on *promissory notes*, unless stipulated in the contract itself. If this decision was correct, one object of the statute was to introduce a *new* rule in regard to notes, and much the most probable inference from the enactment is, that in view of the discrepancy and doubt on this subject, affecting the different forms of commercial paper, the legislature thought it best to provide for all cases by an explicit uniform rule.

But further : in the court of exchequer in England, as late as 1834, it was argued by counsel, that on bills payable at sight, days of grace are not allowed. The adverse counsel *do not deny this*, but seek to prevent a recovery upon another ground. The court expressly decline deciding whether such bills are allowed days of grace or not, and dispose of the case upon a ground entirely consistent with the plaintiffs' argument, that they are *not*. (See *Dixon* v. *Nutall*, 1 Compt. Mees. & Roscoe, 309.)

Examples in *practice*, in which days of grace are *not taken*, and especially where litigation has arisen, and no claim is made that such days should have been allowed, also tend to confirm the belief, in the absence of other evidence, that it

cannot be declared as *law*, that such bills are entitled to grace. Of this description, instances are found in the cases of *Clark* v. *Merchants' Bank*, 2 Comstock, 382 ; and 1 Sandford Sup. Ct. R. 500; and *Kobb* v. *Underhill*, 3 Sandford's Ch'y R. 277.

The convenience of travellers, by whom such bills are more frequently used, is suggested by Pothier, as a reason for denying to them the indulgence of days of grace—a consideration which is, in the absence of any established usage to the contrary, entitled to weight, and the laws of France and Spain are said to agree in this respect.

The view which I have taken of the subject recognizes a uniform rule, harmonious in itself, and convenient of application, viz.: that where time of payment is in terms given to the drawee after sight, or after date, or by naming a future day, days of grace are to be computed and allowed to him; but where the terms of the bill import immediate payment *on presentation*, its terms are in this respect to be pursued.

My conclusion is, that the language of the instrument, in the absence of any settled legal principle modifying its import, must govern the court in determining its meaning and effect.   And that there is no known recognized usage which the court, as a matter of law, can say has given to such bills the allowance of days of grace.

The judgment should be affirmed.