DEBT.

*Case 117.*

*July 2.*

The case stated.

## Lewis vs Harbin and Downing.

APPEAL FROM THE FAYETTE CIRCUIT.

*Obligation of contracts.    Limitation.    Pleading.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

ON the 3d day of February, 1834, Harbin and Downing executed their note under seal, to Lewis the appellant, for eight hundred and seventy five dollars, payable on the 1st day of January, 1835. On the 24th day of February, 1843, Lewis brought suit on the note. Downing pleaded first, in several pleas, in substance that he had executed said note as surety only, and was discharged from liability, or the plaintiff's action was barred by his failure to sue within seven years after his cause of action had accrued, and within five years after the passage of the act of the 8th February, 1838. Secondly, In several other pleas, he pleaded in substance, that he was surety only, and that the plaintiff and principal debtor had made a novation without his privity or consent, by which further time was given on the payment of usury in advance. Demurrers were filed to all these pleas, and overruled as to the first set and sustained as to the second. Whereupon, after the plaintiff had filed defective replications to the first set of pleas, and demurrers had been sustained to them, he offered to withdraw them and file replications, each of which, in substance, denies that Downing had executed the said note as surety only, and "relies on the said note as an estoppel to said Downing's

alledging and proving that he did sign and seal said note as surety only."

The Court refused leave to file these replications, and no others being offered, judgment was rendered against Harbin upon his confession, and in favor of Downing upon his first set of pleas, and Lewis has appealed to this Court.

This case involves the construction and constitutionality of the third and fourth sections of the act of 1838, (3 *Stat. Laws,* 559.) The third section provides "that from and after the first day of July, 1838, sureties, their exe-cutors, administrators, heirs, and devisees, shall be dis-charged from *liability* on all written obligations, other than those provided for in the first and second sections of this act, where seven years shall have elapsed without suit, after the cause of action accrued on such written ob-ligation."

Question involv-
by the pleas.

The fourth section provides, "That the provisions of this act shall not apply to obligations heretofore executed, until five years after the passage of this act."

Retrospective statutes have ever been regarded as im-politic and unwise, as they are in the general, unjust and oppressive. So far as they are made to act on prior con-tracts or transactions, they are calculated to take the com-munity by surprise, and especially the ignorant and un-skilled in the laws, who, while they are reposing in secu-rity, under the presumed continuance of the laws under which their contracts were made, are suddenly aroused from their quiessent security, by the annunciation that they had lost forever their most valuable rights, by the silent operation of a subsequent statute, which they never before heard of. It is this consideration, or the convic-tion of the unconstitutionality of such laws, so far as they are made to act on pre-existant contracts, that has indu-ced the Legislature of Kentucky, in the general, to avoid giving to their statutes a retroactive operation.

Both of the statutes of 1828, (1 *Stat. Laws,* 645–6,) and (2 *Stat. Laws,* 1442,) are upon similar subjects to the one under consideration, namely, the discharge of sureties from liability. The first provides a mode by which sureties in replevin bonds, and in other bonds hav-

LEWIS
*vs*
HARBIN, &c.

ing the force of a judgment, may be discharged, and the second provides a mode by which sureties in ordinary notes or bonds may be discharged. Yet out of abundant caution, and with that scrupulous care which is deserving commendation in the Legislators who enacted them, a proviso is appended to each of these statutes, expressly interdicting a construction which might make them apply to pre-existing contracts. And for similar reasons this Court and all other enlightened tribunals have ever inclined to give to statutes of doubtful import, a prospective application only.

Were it not for the fourth section, we would not hesitate, in accordance with the rule suggested, to give to the statute before us, that construction which would make it apply to future contracts only. But the fourth section clearly indicates the legislative intention to apply it to contracts made before as well as after its passage. Giving effect to the fourth section as well as prior sections, so as to make them all harmonize, as near as may be, we are forced to this conclusion. The discrepancy which exists between the fourth and other sections of the act, was produced most probably, by the offer and adoption of the fourth section as an amendment, in the progress of the bill through the house, by some member who understood by its original frame, that it was intended to apply to pre-existing contracts, as well as all others, and that it would have the effect to discharge sureties from their obligations upon such prior contracts, after the first of July, 1838, only about five months after the passage of the act, provided seven years had run from the accrual of the cause of action; and that to correct this glaring injustice resulting from an erroneous interpretation of the bill in its original shape, the fourth section was offered. By its adoption, as it clearly indicates the Legislative will to apply the statute to pre-existing contracts, we must understand and give operation to it as they understood it. And to avoid the contradiction which exists between the fourth section and the third, as to the *time* of the surety's discharge, we must, in accordance with the rule prescribed for the interpretation of statutes, (6 *Bac. Ab.* 382,) regard the fourth section as an amendment or proviso,

The statute of 1838, (3 *Stat. Laws.* 559,) decided to be a statute of limitation and not unconstitutional.

which speaks the later intention of the Legislature, and so modifies and changes the prior sections as to extend the *time* for the discharge on such contracts, to five years from the passage of the law, instead of the first day of July, 1838. And though the language of the section, "sureties, &c. shall be *discharged* from all written obligations," might be construed to reach beyond a mere act of limitation, yet looking at the enacting clause and the provisions of the act as a whole, and the obvious intent of the Legislature in its enactment, we regard it as an act of mere limitation. And we the more readily yield to this interpretation, as the clause, if construed to reach beyond this object, would be obviously unconstitutional, so far as it attempted to *discharge* sureties from pre-existant obligations.

So understanding the statute, the time for suing had expired before the suit was commenced on the note in question.

But the contract having been made and note executed prior to the enactment of the statute, and under a different system of laws, giving to it its obligatory force, the question arises, is the statute, as a mere act of limitation as to such contracts, constitutional?

The constitution of the United States, (*Article* 1, *Sec.* 10, *Stat. Laws,* 21,) provides that "no State shall pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts." And the constitution of Kentucky, (*Article* 10, *Sec.* 18, *Stat. Laws,* 73,) provides that "no *ex post facto* law, nor any law impairing contracts shall be made." It is contended that the sections of the statute referred to, so far as they apply to pre-existing contracts, are inconsistent with the latter clauses of both these sections of the State and Federal constitutions, and are, therefore, void.

Constitutional provision with respect to the obligation of contracts.

It was said by Chief Justice Marshall, in the case of *Sturges* vs *Crowningshield,* (4 *Cond. Rep. U. S.* 421,) that "statutes of limitation relate to the remedies which are furnished in the Courts. They rather establish that certain circumstances shall amount to evidence that a contract has been performed, than dispense with its performance."

Chief Jus. Marshall's opinion in *Sturges* vs *Crowningshield,* (4 *Cond. Rep.* 421.)

LEWIS
*vs*
HARBIN, &c.

Justice Bald-
win's opinion
in *Jackson* vs
*Lampkin,* (3
*Peters,* 290.)

And in the case of *Jackson* vs *Lampkin*, (3 *Peters'* *Rep.* 290,) Justice Baldwin said, and which was concurred in by the Court, (it being in the case of an executed contract, a deed which had not been recorded in time, under the statute of New York,) "it is within the undoubted power of State Legislatures, to pass recording acts, by which the elder grantee shall be postponed to the younger, if the prior deed is not recorded within the limited time, and the power is the same, whether the deed is dated before or after the recording act. Though the effect of such a law is to render the prior deed fraudulent and void, against a subsequent purchaser, it is not a law impairing the obligation of contracts; such too is the power to pass acts of limitation and their effect. Reasons of sound policy have led to the adoption of laws of both discriptions, and their validity cannot be questioned. The time and manner of their operation, the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend on the sound discretion of the Legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment. Cases may occur where the provisions of a law on those subjects may be so unreasonable as to amount to a denial of a right, and call for the interposition of the Court."

Opinion of this
Court, *Amy* vs
*Smith,* (1 *Litt.*
331.)

And our predecessors, in the case of *Amy* vs *Smith*, (1 *Littell*, 331,) say "It cannot be pretended that the Constitution of the United States, contains any provision which prohibits the States from passing acts of limitation in general. It may indeed be questioned, whether an act limiting the time of bringing an action to enforce a contract, which when made, was not subject to such limitation, would not be incompatible with that clause of the constitution, which prohibits a State from passing any law impairing the obligation of contracts; for if, as is supposed by some whose opinions are entitled to great weight, the obligation of a contract consists in the remedy which the law affords, to enforce its performance, it would seem to follow, that an act limiting the time of bringing an action upon a contract, which when made

was not subject to such limitation, would impair the obligation of the contract."

The opinions expressed in the foregoing quotations, by Chief Justice Marshall, and our predecessors, were *dicta* not necessary to be expressed in the cases before them, and consequently not entitled to the weight of judicial decisions. The decision of the Supreme Court, as delivered by Justice Baldwin, was on the subject of, and applied to the case of an *executed* contract, and it may be well questioned whether a destinction ought not to be taken, in the application of the Constitution, to executed and executory contracts.

It is true the provision has been indiscriminately applied to both classes of contract, and protection afforded to both. But it may be well questioned whether in the nature, character and extent of the protection, there is not a difference.

By the enactment of recording or limitation laws, or other laws for the regulation and security of the peace of the community, there is no interference between the *contracting parties*, or between debtor and creditor. The laws are made to act upon the vested rights and titles of the whole community. The rights between vendor and vendee, are not interfered with, but the latter, when he derives title, may be presumed to take and to hold as his vendor held, subject to those rules and regulations for the general peace and security of society, to which his vendor would have remained subject, had the title continued with him, and subject to those rules and regulations, applicable to the rights and titles of all others in like condition.

In cases of executed contracts, or titles or vested rights, derived and held under the laws of the States, reasons of sound policy would authorize the adoption of statutes of limitation, and other regulations for the security of titles, and the peace of the community ; and such laws most properly have never been deemed to fall under the constitutional inhibition, but their enactment and the time and manner of their operation, are still left to the exercise of a sound discretion by the Legislatures. But even in relation to executed contracts or vested rights,

LEWIS
*vs*
HARBIN, &c.

to use the language of Justice Baldwin, "cases may oc-cur where the provisions of a law on these subjects, may be so unreasonable as to amount to a denial of a right, and call for the interposition of the Court."

This Court, in *Blair* vs *Williams*, & *Lapsley* vs *Brashear*, &c. (4 *Litt.* 84–87.)

In relation to executory contracts, our predecessors, subsequently to the intimation of their opinions in the cuse of *Amy* vs *Smith, supra,* in the cases of *Blair* vs *Williams, and Lapsley* vs *Brashear and Barr,* (4 *Litt. from* 34 *to* 87,) after bestowing great labor and research on the subject, came to the conclusion that the remedial power of the law to enforce the contract, or damages for its breach, constituted the obligation of contract implied in the constitutional provision.

If this be the proper definition of the obligation of con-tract, then it would seem to follow that the Legislature has no power to pass any law, changing those under which the contract originated, to the prejudice of the obligee, nor to prescribe, by subsequent enactment, *new terms, con-ditions, limitations or restrictions* to the exercise of his right, or the enforcement of his remedies, as they existed when his contract was made, and by which legal force and efficacy were given to it at its creation.

It is, according to the definition given, the power of the remedial laws to enforce the performance of executory contracts, or damages for their breach, that gives vitality, force and value to them. If the laws be injuriously chang-ed, under which they derive their force and value, or a new limitation be prescribed, which they were not sub-ject to when they were made, by which the holder of the obligation is required to incur costs, and subject himself to the expense and trouble of suing, which he was not re-quired to do before, or to find out the new enactment and avail himself of its remedy, within the time prescribed, or in case of his failure, be made to forfeit his right to enforce his contract at all, may it not be said, that his pre-existing legal remedy has been impaired, and if so, that his legal obligatin has been impaired. If, at the time when the contract is made, the obligee is subject to a different limitation to his remedy, or no limitation at all, and a subsequent act should be passed, shortening the limitation or prescribing one when none existed be-

fore, and subjecting him to a loss of his demand, if he does not sue within the time prescribed by such an act, his remedy is shortened, and it would seem is impaired ; and if so, the obligation of his contract, which consists in his remedy to enforce it, is impaired. If he might sue before without limitation of time, whenever it might suit his convenience, his means or his interest, and by a subsequent statute, is required to sue in a limited time or forfeit his right, by such an act his remedy is curtailed, and consequently to that extent it would seem his rights have been invaded, and the obligation of his contract impaired. And if the the Legislature possessed the power to pass limitation laws, applicable to such contracts, as the time to be prescribed is a subject for their own discretion, we know of no constitutional limit to its exercise, or power to controll it. And if this be so, then notwithstanding the inviolability of contracts, intended to be secured by this constitutional inhibition upon the power of the States, contracts would be still left at the mercy of Legislative discretion, proceeding upon the idea of passing a limitation law, or a law acting upon the remedy only.

Had the 4th section in the statute under consideration, not been offered and engrafted into the statute, and the 3d section been enacted with the understanding of it by the Legislature, which is to be implied from the 4th section, that it applied to and cut off all action against sureties upon prior contracts, after the 1st day of July, 1838, only about five months after the passage of the law, a time scarcely sufficient to enable, even the lawyers of the community, to learn that such a law had passed, such an enactment would have shocked the moral sense of mankind, as unjust and iniquitous. But had it passed in that shape, if it be a subject of Legislative discretion, we cannot perceive by what judicial power its operation could have been controlled.

If, as we have intimated, retrospective statutes, or statutes acting upon contracts before made, have been regarded by the Legislature of Kentucky and the Parliament of England, as so unjust and oppressive as to induce them in the general to refrain from their enactment, and all enlightened Courts to give such interpretation to statutes as restrain

them from a retrospective application, it would seem strange, while the framers of the Constitution of the State and Nation, were engaged in guarding private rights, and shielding executory contracts, if this odious fiction of Legislative power has been left uncontrolled.

We understand the clauses in both constitutions as intended to effect the same object, a guaranty to the citizen of security in his contracts against Legislative encroachment; and this construction has been given to these clauses by this Court. The constitutionality of a prospective limitation enactment, though made to operate upon executory contracts made before, is sustained upon the argument that the law does not impair the obligation of the contract or the remedy to enforce it, but leaves both in full force, and only fixes a time within which the remedy shall be pursued, and if not pursued within the time fixed, the obligee is presumed to have been paid, or to have released or abandoned his contract, and if his obligation is impaired, it is impaired by his own voluntary act or want of action, and not by the law. The law imposed upon him the superadded burthen of inquiring into and knowing the enactment. If he did not know it, he cannot be said to have released or abandoned his contract, for failing to avail himself of the remedy afforded. It has been said, that all must be presumed to know the law, but it is certain that the maxim is not true in fact, so far from it, there are few who do know it. Contracting parties must be presumed, in the general, to know the laws under which their contracts are made, but it is not even universally true, that they will be presumed to know the law of their contracts, against palpable proof to the contrary, as instances are not unfrequent of their being discharged from their contracts upon the sole ground of their ignorance of the law under which they were made. It would seem to be enough to require the citizen to look to and know the law of his contract, and not to have imposed upon him the burthen of looking to and availing himself of other subsequent enactments, at the peril of forfeiting forever the obligation of his contract, and the loss of his entire demand. It is certain in the case before us, that Lewis, by the joint operation of the new enactment,

and his own ignorance of its existance, has been deprived of the benefit of his contract and lost his debt forever. For it cannot be presumed that if he had known of the law that he would not have availed himself of the remedy afforded, within the time prescribed by its provisions; it is difficult, therefore, to say that the enactment, by imposing new terms, burthens, limitations, and restrictions · upon the exercise of his remedial rights, has not impaired the obligation of his contract. But on the other hand, the prospective time given by the statute would seem to be reasonable, not only to enable the creditor, by the exercise of reasonable vigilance, to arrive at a knowledge of the enactment, but also to avail himself of the remedy afforded. And it may be for the repose of society, that the contracting parties should be understood as making their contracts with a view to any future modification, that may be made in the modes of proceeding to enforce the contract and damages for its breach, or in the time limited for the pursuit of the remedy; and if such time be reasonable, that the creditor should be presumed to know the change, and knowing it and failing to avail himself of it, has surrendered or abandoned his contract. Be this as it may, though we are not aware of any direct decision of the Supreme Court of the United States as to the power of the Legislatures to shorten the time of limitation upon executory contracts made before, yet since the doctrine of Chief Justice Marshall, before referred to, there have been dicta upon dicta, down to the present day, recognizing the power as applicable to both classes of contracts, executed and executory, and these dicta have been carried into our elementary treatises as the settled law of the land. And if as an original question, we might feel disposed, as the best mode of preserving the immutability of private contracts, to decide against the exercise of the power, as we entertain doubt on the subject, we feel it our duty to yield to those repeated intimations and apparently settled determination of the Supreme Court, who are the proper expounders of the Federal constitution, and to sustain the enactment in question. And we the more readily come to this conclusion, from the the fact that if we have erred in this determina-

tion in favor of the law, the question may be submitted
directly to the Supreme Court and finally settled, if the
plaintiff feels himself agrieved; and if determined against
the law, the case could not be submitted to that tribunal.

We are, therefore, of opinion that the first set of pleas
presented a good bar to the plaintiff's action. We also
think that the matters set up in the second set of pleas,
were not pleadable at law. According to the current of
decisions of this Court, and the practice of the inferior
tribunals, the surety cannot plead at law his release or
discharge from the contract, by reason of a *novation* or
arrangement between the creditor and principal debtor,
without his knowledge or consent. This matter has been
adjudged to be more appropriately the subject of equita-
ble cognizance, and we are not now disposed to change
the rule or vary the practice.

But we think the Circuit Court erred in refusing to the
plaintiff permission to file the two replications to the de-
fendants' pleas, denying that Downing signed and sealed
the bond sued on as surety of Harbin. The fact is averred
and must have been averred in his pleas to render them
good, and the replications offered, deny the fact and con-
clude to the country. And if it be true as contended, that
duplicity in pleading a matter of law and fact under our
system, may still be relied on as a good ground of demurrer,
and consequently as a good ground of objection to a plea
or replication, still if the matter of law replied is not an
available response to the plea, and the matter of fact is,
. the demurrer to the replications should not have been sus-
tained on that ground, nor the replications rejected. And
we regard the estoppel relied on in the replications offer-
ed, as no bar to the proof of the fact of suretyship, and
as no available response to the pleas, and the same might
and should have been treated as surplusage, and issue to
the country taken on the fact of suretyship. The plain-
tiff had not offered a replication to the second plea before,
and had before offered only a single replication in fact to
the first plea, which had been adjudged bad, he should
not, therefore, be regarded as trifling with the Court in
offering the replications for the first time, containing a
distinct denial of a substantial fact, necessary to sustain

A surety cannot
plead in defence
to a suit at law,
on a bond, that
he is surety on-
ly, and that he
has been releas-
ed by indulgence
extended to his
principal by ob-
ligee, to which
he did not as-
sent.

To a plea relying
upon the statute
limiting actions
against sureties,
it is a good reply
to deny the fact
of suretyship a-
verred in the
plea.

the defence, because in those replications he attempts to
save an estoppel, which we judge not to be an available
answer to the plea.

For the error of the Circuit Court in refusing leave to
file the replications in question, the judgment is reversed
and cause remanded, that a new trial may be granted and
further proceedings had.

*Robinson & Johnson* for appellant: *Robertson, Wool-
ley, Combs & Shy* for appellees.