### HEATH v. DERRY BANK.

The peculiar rights of sureties originated in, and are exclusively the growth of equity, and it was formerly held that the remedy of the surety was only in equity, and could not be made available in courts of common law.

But in this State (as in most of the United States), it is held that the liabilities of sureties are governed by the same principles at law as in equity, and generally the same considerations which are sufficient in equity to discharge a surety, will be available for the same purpose at law.

In such cases, where equity had, originally, exclusive jurisdiction, but where courts of law have now assumed to exercise the same equitable jurisdiction, both courts will continue to exercise concurrent jurisdiction, and a party may apply to either ·for relief; while, in other cases, the general rule is, that equity will not assume jurisdiction of a case where a party has a full and sufficient remedy at law.

A party will be estopped in equity and at law from saying that he was not what he represented himself to be, if another has acted upon that representation.

Hence, where several persons had signed a note, in which they jointly and severally, and "all as principals," promised to pay, &c., each signer will be estopped in equity as well as at law to plead or to prove that he was only a surety, and that this fact was known to the payee; or to claim any of the equitable rights or privileges of a surety, as against the payee, which in his contract he has agreed to waive and abandon.

Equity will not assume jurisdiction in a case between a creditor and his principal debtor, when the latter has a sufficient remedy at law.

A principal debtor will be discharged from his contract to his creditor only by performance or satisfaction; or by a legal discharge, either by act of the creditor or by operation of law.

IN EQUITY. A. C. Heath, with C. W. Baldwin and S. H. Edgerly, had given to the Derry bank a note for $800, which sum they jointly and severally, "all as principals, promised to pay to said bank," &c.; "giving said bank the right of collecting this note at any time, notwithstanding the payment of interest in advance." This note had been sued, and there had been a trial at law, and a verdict against all the signers of the note; and upon a case reserved and assigned to the law term, judgment was ordered upon the verdict. See *Derry Bank* v. *Baldwin*, 41 N. H. 434..

Whereupon said Heath immediately filed this bill in equity, in which he set forth the above facts, and prayed that said bank be perpetually restrained and enjoined against the further prosecution against him of said suit at law, now pending in said court as aforesaid, for the collection of said note, and against all further proceedings of any kind by said bank against him, for the payment of said note.

This injunction is asked upon the ground that although on said note all the signers are represented as principals, yet in truth said Baldwin was sole principal, and said Heath was only a surety for said Baldwin, and that this fact was well known to the bank at the time said note was given; and alleges that at the date of the note, and on one other occasion, said Baldwin had paid interest in advance on said note at the rate of nine per cent, for certain definite periods, and that the bank agreed, in consideration of such payments, to wait on said Baldwin for those periods respectively, and that, June 2, 1858, said bank agreed to wait on said Baldwin one year, in consideration that said Baldwin should exchange their bills for those of other banks, and thereby assist said bank in extending

their circulation; that a suit had been commenced by said bank, in which the property of all the signers had been attached, which suit had afterward been settled by said bank with said Baldwin; that Baldwin was then responsible, and that all these proceedings of the bank with Baldwin had been without the knowledge of Heath, and that Baldwin had assigned various stocks to a large amount to said bank, and paid large sums of money, which were to have been applied in payment of this note, in whole or in part, and that no such application had been made, &c.

The answer of the bank denied the fact that Baldwin was sole principal on said note, and Heath only surety; denied all knowledge or notice of any such fact; admitted that interest at the rate of nine per cent had been paid, as alleged, in advance, for certain periods of time, but denied any agreement to wait on Baldwin for payment, and denied the agreement to wait a year, or any other time, from June 2, 1858, in consideration that Baldwin would exchange the money, and denied that Baldwin had ever assigned to or deposited with said bank any stocks, or paid any money to be applied, in whole or in any part in payment of this note; but alleged that all stocks which Baldwin had deposited with or assigned to them had been applied upon other claims, which the bank held against said Baldwin, according to the agreement between said Baldwin and the bank; admitted the bringing of a former suit, and the settling of the same, but denied that Baldwin had then any property, and that any thing of Baldwin's was attached on said writ, &c.

After the testimony was taken, and the case was in order for a hearing upon the bill, answer and proofs, the plaintiff's solicitor moved the court that certain issues or questions be sent to the trial term of said court in said county, that the same might be tried and found by a verdict of the jury.

"First, whether C. W. Baldwin, named in said bill as the first signer on the note described in said bill, dated October 25, 1857, for $800, was sole principal on said note, and said Heath a surety only; and whether these facts were well known by said bank at the time said bank took said note of said Baldwin?"

Nine other issues were presented, one upon each allegation in the bill, which, in the view the court take of the case, are not material to be stated more particularly.

*I. A. Eastman*, solicitor for the plaintiff.

*Sawyer & Stevens*, solicitors for the defendant.

SARGENT, J.   In England a surety may show that he is such in equity, whether the question arise in a collateral proceeding, to obtain indemnity from a principal, contribution from a co-surety, or in a suit brought directly on the contract by the creditor, whether his character as surety be designated on the instrument or not. But much doubt has been felt in their courts whether he can assert his true character in a court of law, where the fact of his being surety does not appear on the face of the contract.

The original doctrine of the common law undoubtedly was, that a court of law deals only with legal liabilities and legal discharges, and that, although an agreement to give time to the principal varies the relations between him and the surety, and thus constitutes an equitable discharge of the latter, yet that such a defense was exclusively cognizable by a court of equity, and could not be set up as a bar to an action at law. These doctrines may have been much relaxed by recent English decisions, though upon that point their authorities are conflicting. *Price* v. *Edwards*, 10 B. & C. 78; *Rees* v. *Barrington*, 2 Ves. 541; *Saxton* v. *Peat*, 2 Camp. 185; *Peacock* v. *Bishop*, 3 B. & C. 605; *Bell* v. *Banks*, 3 Scott N. R. 503; *Ashlee* v. *Pidduck*, 1 M. & W. 568; *Stone* v. *Compton*, 5 Bing. N. C. 142.

In some of the United States the old English doctrine seems to prevail, that a surety can only avail himself of his remedies, as against the obligee or promisee, in equity, and not at law. We infer this is the case in Kentucky: *McHenry* v. *Crabtree*, 6 Mon. 104; *Lewis* v. *Harbin*, 5 B. Mon. 564; and in North-Carolina, *Shaw* v. *McFarland*, 1 Iredell 216; *State Bank* v. *Locke*, 4 Devereux 529; and in New-Jersey, *Pintard* v. *Davis*, 1 Spencer 215; and in Connecticut, *Bull* v. *Allen*, 19 Conn. 101.

But in a majority of the States the opposite doctrine prevails, and it is held that any defense which would avail a surety in equity may be made as well at law; and it has been decided in most of the supreme tribunals in this country that whatever will discharge a surety in equity will be equally effectual as a discharge at law, and that time given to the principal upon a contract which shall bind the creditor not to sue during that time, will be a good defense to an action at law against the surety, whether the fact of the suretyship appear on the face of the contract, or was shown by extrinsic evidence, if the creditor had notice of the true standing and relation of the parties. This is so held in New-York: *King* v. *Baldwin*, 2 Johns. Ch. 554, and S. C. in Court of Errors, 17 Johns. 384; *Schroeppel* v. *Shaw*, 5 Barb. S. C. R. 580. So in Massachusetts: *Greeley* v. *Dow*, 2 Met. 176; *Gifford* v. *Allen*, 3 Met. 255. So in Maine: *Leavitt* v. *Savage*, 16 Me. 72; *Hutchinson* v. *Moody*, 18 Me. 393. So in Pennsylvania: *Clippinger* v. *Cripps*, 2 Watts 45. So in Ohio: *Bank of Steubenville* v. *Hoge*, 6 Hammond 17. So in Vermont: *Viele* v. *Hoag*, 24 Vermont 51, where it is said that though the subject of the equitable relief of sureties is one of original jurisdiction in a court of chancery; though the peculiar rights of a surety originated in, and are exclusively the growth of equity, and though it was formerly held that the remedy of the surety was only in equity, and could not be made available in courts of common law, yet it is now held that the liability of sureties is governed by the same principles at law as in equity. And probably, with few exceptions, the same considerations which are sufficient in equity to discharge the surety will be available for the same purpose in law.

Such is also the law in New-Hampshire: *Crosby* v. *Wyatt*, 10 N. H. 318; *Grafton Bank* v. *Kent*, 4 N. H. 221; *Bank* v. *Colcord*, 15 N. H. 119, where it is said, "We have repeatedly recognized the rule,

originating in equity, but now generally held to be equally a rule at law, that a binding contract for a further delay of the time of payment, made between the creditor and the principal, without the assent of the surety, discharges the latter from the obligation of the contract." And it is also held that the other principles of equity which regulate the relation of principal and surety, as far as it can be done, will be applied in a court of law. 2 Lead. Cases in Equity 365, 386, notes.

In Indiana the court has held the same doctrine: *Harbert* v. *Dimont*, 3 Ind. 346; and in a later case they go a step further, and a step beyond any of the other courts in the country, so far as we know, and hold that this extension of jurisdiction at law deprived the surety of any right to appeal to equity for relief. *Dickerson* v. *Board of Commissioners*, 6 Ind. 128. Ordinarily it is a sufficient reason why equity should and will refuse to assume any jurisdiction of a case, that the party has a full and perfect remedy at law.

But we think a broad distinction should be made, as it has generally been made, in this particular, between this class of cases, relating to the rights and remedies of sureties, and other cases where equity never had exclusive jurisdiction. In cases like this, the jurisdiction of courts of equity is not changed or affected by the courts of law now entertaining jurisdiction in cases where they formerly rejected it. Courts of law can not thus enlarge or restrain the powers of courts of equity at their pleasure, for their jurisdiction is of a permanent and fixed character; and, being once legitimately vested, it must remain until the legislature shall abolish or limit it. 1 Story Eq., sec. 64, *i*.

So in *Kemp* v. *Pryor*, 7 Ves. 249, Lord *Eldon* says, "I can not hold that the jurisdiction of courts of equity is gone, merely because courts of law have exercised an equitable jurisdiction." A court of equity will extend the same relief, and exercise the same powers in behalf of sureties, that were exercised before jurisdiction of this subject was entertained at law. 2 Lead. Cases in Eq. 365. The correct view, then, is, that in cases where equity had originally exclusive jurisdiction, but where courts of law have now assumed to exercise an equitable jurisdiction, both courts will exercise concurrent jurisdiction, and a party may apply to either for relief; while in other cases the general rule is, that equity will not assume jurisdiction of a case where the party has a sufficient remedy at law.

The same principle applies to the doctrine of equitable estoppel, or estoppel *in pais*, which had its origin exclusively in equity, as did the doctrine of the equitable rights of sureties, but is now applied alike both in courts of equity and of law. *Davis* v. *Handy*, 37 N. H. 75; *Odlin* v. *Gove*, 41 N. H. 465, and cases cited.

But the plaintiff claims that greater facilities are and should be allowed in equity than in law, in showing the true positions of the parties, and that Heath may have in this connection some equitable rights, or equitable remedies, of which he could not avail himself in his suit at law; and we are urged so strongly and so ingeniously, by the plaintiff's counsel, to receive and consider the evidence in this case that Heath was in fact only a surety for Baldwin, who was sole

principal on the note, and the bank had notice of these facts, and to send that question to a jury for their verdict, that we have been led to reëxamine the former decision in this case, with care, and have also examined the authorities upon this subject, to see if we could, by any rule known to equity, hold that this evidence, if received, or these facts, if proved and found by a jury, could be allowed to affect the terms of the contract which the parties in this case made, and whether we could in equity afford this plaintiff any relief.

Suppose Baldwin wished to hire $800 of the defendant bank. The bank by its cashier says to him, we have the money, but we do not propose to loan it to you, or to any one else, except upon undoubted security. And we propose to cut off all opportunity for any troublesome questions to arise in relation to sureties, and therefore take no notes signed by sureties as such, or any, where it is open to proof that any are sureties. But if you furnish a note signed by three responsible men, who will expressly stipulate that they are principals, and agree that they will stand and be held as such upon the note, you can have the money, and not otherwise. Such a note is accordingly furnished, and the money is paid over to Baldwin. Now what consequence is it to the bank who had the money? or what consequence is it to the signers of the note, as against the bank, who had it?

The bank has let somebody have it, not upon his own name and responsibility, but because this plaintiff was willing to contract, and did contract with the bank, to be responsible for it as principal; and if that contract is valid, the fact that Baldwin received all the money on the note, or that he used it all after it was received, is entirely immaterial, and that the bank had full knowledge of that fact at the time would be alike immaterial. It would not in the least alter or affect the express stipulations of the plaintiff's contract to hold himself responsible for the same to the bank as a principal. In equity a party can not be allowed to contradict the terms of a written contract, by contemporaneous parol testimony, any more than he can at law. So in equity a party will be estopped to say that he was not what he represented himself to be, if another has acted upon that representation, as he would be in law. 2 Smith Lead. Cases 642, and authorities.

A surety, though equally bound with the principal to pay the original note according to its terms, yet has certain rights that he may insist on, and the creditor has certain duties to perform, both of which were originally cognizable only in a court of equity, but now equally so in law. But these rights on the one hand and obligations on the other are protected and enforced solely for the benefit of the surety, and he may lawfully and equitably waive those rights, as he may all others of a similar nature, by an express or implied stipulation to do so, or by any acts or declarations inconsistent with its existence, on which others have acted. Hence no one who contracts expressly as principal, or assumes a position which is at variance or inconsistent with the relation of suretyship, on which another has acted, shall be allowed to receive the benefits inci-

dent to that character. He is estopped by his representations and acts, and by his express contract, to claim any such rights or benefits; and to allow him now to claim and receive the rights to which he might otherwise have been entitled as surety, would be not to enforce the contract which the parties made, but a very different one, and would be allowing this plaintiff to commit a fraud upon the bank by holding it to a contract which it did not make, and allowing him to enjoy rights and privileges which he had expressly and in writing contracted to waive and abandon.

It is not claimed in this case that Heath was induced originally to sign the note by any fraud, or that there was any mistake in its terms. If that were so this court, sitting in equity, might rescind the contract, on the ground of fraud, or reform or correct it, on the ground of mistake. But this is not an application for that purpose, nor is there any evidence of any fraud or of any mistake in relation to the making and executing of this note. The original contract, then, is to remain as it stands, and is to be interpreted only by its own terms and limitations. This plaintiff therein contracted as principal with the defendant, and all the evidence offered would be incompetent, because entirely immaterial; for if all the facts stated were proved or found by a verdict of a jury, they could not in any way alter or affect the construction or operation, the force or effect, of the written contract.

But let us examine the authorities on this point. This question arose directly in *Claremont Bank* v. *Wood*, 10 Vt. 582, where the defendant with two others signed a note to the bank, in which they " each as principal, jointly and severally promised," &c. The Supreme Court say that this was a contract made, and by its terms, to be performed in New-Hampshire, and hence was to be decided according to the laws of that State applicable to the contract. They hold that Judd, one of the signers of the note, would be clearly discharged as a surety, upon the facts found by the jury, unless such a result was prevented by the peculiar terms of his engagement; but that the terms, "each as principal," in the note, fixed the liability of each signer to be the same. "And since Judd has seen fit expressly to avow himself a principal in the note, and thereby, so far as the plaintiffs were concerned, to renounce the character of a surety, with the privileges incident to it, we are not at liberty to absolve him from the consequences. To hold him still entitled to those benefits which he openly disclaimed at the time of entering into the contract, would be to vary and control its intended operation, and in effect enforce a contract which the parties never made."

So in Ohio, *Bank of Steubenville* v. *Hoge, supra,* the court held, as the same court did in *Smith* v. *Bing,* 3 Ohio 85, and as our own court did in *Davis* v. *Barrington,* 30 N. H. 517, that the facts might be shown as to the true relations of the signers of a bond, where there was nothing on the bond to show whether they were principals or sureties. But the court there say, " If the obligation recited that the obligors were principals, there might be color for the assumption that the admission concludes them. In the absence of such recital we find nothing to stop them from proving the truth."

And in *Branch Bank* v. *James*, 9 Ala. 949, which was a suit on a promissory note, payable jointly and severally, it was held that parol evidence was admissible to show that some of the makers had signed the note merely as sureties, and that it was equally open to the plaintiff to show, by parol, that at the time of making the instrument the defendants had undertaken to deal as principals and not as sureties.

But we have a case directly in point in *Sprigg* v. *The Bank of Mt. Pleasant*, 10 Peters 257, where it is held that an obligor, in a bond which declares him to be a principal debtor, is estopped to plead that he was merely a surety. The court say, "Where one who is in reality only surety is willing to place himself in the situation of a principal, by expressly declaring upon his contract that he binds himself as such, there can not be any hardship in holding him to the character in which he assumes to place himself. As to that particular contract, he undertakes as a partner with the debtor, and has no more right to disclaim the character of principal, than the creditor would have to treat him as principal, if he had set out in the obligation that he was only surety."

But the parallel between that case and the present does not stop here. This opinion was delivered in an action at law which came before the Supreme Court of the United States upon a writ of error from the Circuit Court of the District of Ohio. The Circuit Court held that, having contracted as principal, he was estopped to plead or to prove that he was in fact only surety, and the opinion in the Supreme Court sustained that decision. The plaintiff, Sprigg, thereupon brought his bill in equity, upon the equity side of the same Circuit Court of Ohio, to enjoin all further proceedings on the judgment recovered against him by the bank upon the law side of that court. In the Circuit Court the bill was dismissed, and the plaintiff appealed to the Supreme Court of the United States, and the question was there considered, and decided as in a court of equity; 14 Peters 201; where it is said, "When this case was before the court on the writ of error, the effect and operation of the words, 'as principals,' contained in the single bill discounted at the bank, were fully considered, and it was decided that they operated as an estoppel, and precluded the present plaintiff from going into evidence to show that he was only surety in the single bill; and unless it shall be found that a different principle prevails in a court of equity, the same result must follow from the present appeal."

The court, after examining the arguments of counsel and the evidence in the case, as well as the principles of equity to be applied in the case, conclude that the sureties had an undoubted right to waive their character and legal protection as sureties, and assume the character of principals; that the admission in the obligation must have been for some purpose, and that none could be reasonably assigned, except it were intended to place all the obligors upon the same footing, with respect to their liability to the bank. And though it is well settled that sureties are not to be made responsible beyond their contract, and that any agreement with the principal, without the consent of the surety, and to his prejudice,

varying essentially the terms of the contract, will discharge him from his responsibility, yet that this principle can not apply where the surety has, by his own act, exchanged his character of surety for that of principal, and then applies to a court of equity to reinstate him in his character of surety, in violation of his own express contract; that this would be sanctioning a fraud upon the creditor, and that it would be a fraud on the part of the debtor to attempt to convert his contract as principal into that of surety only.

I have been unable to find any authority in conflict with these decisions, where the terms of the contract were the same as in this case. I am satisfied, therefore, that the former decision in this case — 41 N. H. 434 — was not only correct in principle, and well founded alike upon reason and authority, but that the same principles must be applied in equity as at law, and therefore that this plaintiff stands no better here than he did upon the decision of his case at law. The decision of the first question raised and embodied in the first issue, which we are asked to send to the jury, decides the whole case; because it is only to protect the rights of sureties that this court assumes concurrent jurisdiction with courts of law; but where it is settled that the plaintiff is not a surety, and can not come here at all in that character, but that he can only come in the capacity in which he contracted—that of principal—then equity will not take jurisdiction of the case, because as between a creditor and his principal debtor there are no questions which the law is not fully competent to settle without resort to equity. Where a contract is as explicit as this is, and no fraud or mistake is claimed or sought to be reformed in the instrument, and no questions as to the rights of sureties arise, the plaintiff has a perfect remedy at law, if he has any remedy any where. In fact, nearly all the questions raised here have been settled before in the former opinion in this case, and would not be again considered here when it is settled that they would have the same effect and be decided by the same rules and according to the same principles in both courts, the same in equity as at law.

In the bill it is alleged that the agreement to wait a year, on the note, from June 2, 1858, was made upon one consideration additional to the one stated in the case at law: namely, in consideration that Baldwin would exchange the defendants' money for that of other banks. We held that any agreement to wait, in consideration of the payment of interest in advance, was no defense. It would not be, probably, as against a surety, where there is such an agreement in the note upon that subject, as there is in this case. If there was any binding agreement to wait a year, or any other time, or any other consideration, as now alleged, and the suit at law was brought before that time had expired, that defense, if it would constitute any in this case, should have been made at law. But upon the evidence presented to us on that point we are not satisfied that any such contract was ever made. We are also satisfied that the bank has applied all money paid and all stocks assigned by Baldwin to the bank, according to the agreements between said Baldwin and the bank, and that no part of it was ever understood by any party to be applied on this note. But if there was something in the hands of

the bank to be applied on this note, that application could be made as well at law as in equity.

It is alleged that Heath was informed, after the first suit was settled, that the note was settled or paid, or that he would never hear from it again. It does not appear that he was ever so informed by the bank. He may have understood it so from Baldwin, but that could not bind the bank. But suppose the bank had so informed him, what did it amount to? If Heath were surety, it might perhaps have had some equitable bearing upon the case; but he is not a surety, but a principal, and such information would not amount to a discharge of a principal debtor; nor was it an agreement or promise to discharge him. But suppose it had been either of these, it was without consideration, and therefore void. All the questions of fraud that are sought or attempted to be raised in this case between Heath and the bank could only be raised by him as a surety, but do not arise at all when he stands as principal on the note; for it is well settled that nothing will discharge a principal debtor from his contract, but performance or satisfaction; or a legal discharge, either by the act of the party, as a release, or by operation of law, as a discharge in bankruptcy. *Murray* v. *Judah*, 6 Cow. 492, and cases; Story Prom. Notes, secs. 372, 402, *et seq.*

*Bill dismissed, with costs.*